825 A.2d 1108

**Kenneth M. HILIGH**

v.

**STATE of Maryland.**

No. 77, Sept. Term, 2002.

Court of Appeals of Maryland.

June 13, 2003.

Mark J. Hardcastle (Blair, Hardcastle & Ellis, P.A., on brief), Columbia, for petitioner/cross-respondent.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent/cross-petitioner.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, BATTAGLIA, CLAYTON GREENE, JR., (specially assigned) and THEODORE G. BLOOM (retired, specially assigned), JJ.

WILNER, J.

In November, 1995, petitioner was convicted by a jury in the Circuit Court for Prince George's County of armed robbery and related offenses. Those convictions grew out of the robbery of Adrienne Plater that occurred at a Marriott Hotel on February 22, 1995, which we shall refer to as the Marriott

Hotel robbery. Because of proceedings pending against him in one or more other counties, sentencing was delayed until August 1, 1997, at which time he was sentenced to fifteen years for the robbery and a consecutive five years for use of a handgun in the commission of a felony. The Court of Special Appeals affirmed the judgment.

In April, 1999, petitioner sought post conviction relief, claiming ineffective assistance of counsel at his trial. That claim centered on a confession petitioner made to the police during an extended series of interrogations following his arrest on March 20, 1995. His attorney *did* seek to have the confession suppressed on the ground that it was involuntary, but he failed to argue, as part of his claim of involuntariness, the coercive effect of the investigating officers' failure to present petitioner to a District Court Commissioner without unnecessary delay, as required by Maryland Rule 4–212(f). Had such an argument been made, he asserted, it probably would have been successful and would have resulted in the confession being ruled inadmissible. Thus, he claimed, both prongs of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)—deficient performance and prejudice—were satisfied, and he was entitled to a new trial.

The Circuit Court for Prince George's County agreed with him and ordered a new trial. The State sought and was granted leave to appeal, and the Court of Special Appeals reversed, holding that he had not been prejudiced by his trial attorney's performance, even if, *arguendo*, it was deficient. We granted *certiorari* and shall reverse the judgment of the Court of Special Appeals.

## BACKGROUND

Most of the relevant facts are contained in two unreported opinions of the Court of Special Appeals growing out of petitioner's convictions in Prince George's and Howard Counties, *Hiligh v. State*, No. 1227, Sept. Term 1997 (Opinion filed June 5, 1998) (Prince George's County), and *Hiligh v. State*, Nos. 314 and 315, Sept. Term 1996 (Opinion filed Jan. 9, 1997)

(Howard County). The parties have stipulated that the facts recounted in those opinions are accurate, so we shall borrow liberally from them.

In the early part of 1995, police were attempting to locate two African American men who were suspected of carrying out a number of robberies in Prince George's, Anne Arundel, Howard, and Charles Counties, as well as in the District of Columbia and in Arlington, Virginia. One of the men had been identified as Terrence Maith. On March 18, Corporal Kane, of the Prince George's County police, noticed a black Acura automobile, that had been reported both stolen and used in several recent robberies, parked at a hotel. As he called for assistance, he saw two African American men and two women enter the hotel. Before he was able to block escape routes from the parking lot, however, the men became aware of the police presence and fled, one in the Acura and the other in a green Lexus. A high-speed chase proved unsuccessful, but the police learned from the women that the man driving the Acura was "Terry" and the one in the Lexus was "Bo." The women also gave a pager number for "Bo." The hotel advised that the men were registered under the name of Terrence Maith, who had given an address of 4505 Rena Road.

With the information that they had, the police obtained a warrant for Maith's arrest and set up surveillance at the Rena Road address. On March 20, they saw two young black men leave Maith's apartment and enter a Cadillac registered to Maith. The men drove to an adjacent lot, got out of the Cadillac, entered a green Lexus, and drove off. The police attempted to follow but again were unsuccessful, so they returned to the parking lot near Maith's home. While there, they saw the Acura, which they confirmed had been reported stolen. Later that evening, around 9:00 or 10:00, two black males returned on foot; one entered the Acura, the other got into Maith's Cadillac, and they both drove away. The police followed both cars, which stopped at a traffic light and then attempted to flee when marked patrol cars arrived as backup. A chase ensued and, although the Acura got away, Officer Long eventually stopped the Cadillac. After the driver re-

fused to exit on Long's order, Long forcibly extracted him, causing a small cut or bruise on the back of the driver's head.

The driver, who turned out to be petitioner, had no identification, and, although he told Long that his name was Kenneth Hiligh, Long assumed that, because he was driving a car registered to Maith and was without identification, he was, in fact, Maith and was pretending to be someone else. Petitioner was taken to the robbery unit at the county police station, arriving there at 10:58 p.m. on March 20, 1995. Detective Straughan, who had investigated the incident at the hotel two days earlier, knew that petitioner was not Maith and referred to him as Bo. Petitioner denied being Bo, but when Straughan dialed the pager number he had been given for Bo, petitioner's pager, which he still had with him, rang. A search of petitioner revealed a blue and white bandana consistent with that reportedly worn by one of the Marriott Hotel robbers. A photograph was taken of petitioner and, within an hour, an eyewitness to the Marriott Hotel robbery identified the photograph as being that of one of the robbers. At that point, petitioner was formally arrested for armed robbery.[1]

The police then handcuffed petitioner to a one-foot cable connected to the wall of the interrogation room and proceeded to prepare the appropriate charging documents. Notwithstanding that those documents were completed by 3:30 a.m. and that a District Court Commissioner was on duty in the same building, petitioner was left alone in the room, except for possible trips to the bathroom, until about 7:15 the next morning, when Detective Bailey arrived and took him to Prince George's County Hospital for treatment of his head wound. The injury proved minor, and petitioner was returned to the interrogation room at about 8:35 a.m.

After giving petitioner his *Miranda* warnings and obtaining a written waiver, Detective Bailey and a detective from Anne Arundel County conversed with petitioner for several hours in

---

1. At trial, Detective Hinds, who was the detective in charge of the case, testified that petitioner was charged at 11:00 p.m. on March 20.

an attempt to "build a rapport" with him. That was part of Detective Bailey's *modus operandi*—to "take a couple of hours" to get background information and build a rapport. At 1:23 p.m. on March 21, petitioner signed his first inculpatory statement, admitting to involvement in one or more robberies. He then requested, and was given, food. Questioning turned to the Marriott Hotel robbery, and at 1:55 p.m., petitioner signed a statement admitting involvement with Maith in that one as well. That is the confession at issue here. Additional statements were taken at 2:51 p.m., 3:18 p.m., and 4:45 p.m. One final statement was given, but the record does not indicate a time. Each statement was typed in petitioner's presence and was read, initialed, and signed by him.

It appears that the initial questioning concerned robberies in Prince George's County. By 6:00 p.m., the questioning had been turned over to detectives from Anne Arundel and Howard Counties with respect to robberies in those counties. At 10:30 p.m., 23 hours and 32 minutes after he was first brought to the station, petitioner was taken before a District Court Commissioner.

As a result of the evidence gained, petitioner was charged in Prince George's County with armed robbery and use of a handgun in the commission of a felony with respect to the Marriot Hotel robbery, and he was charged in Howard County with two additional armed robberies. The Prince George's County case was tried first, in late October-early November, 1995.

Counsel in the Prince George's County case filed a general omnibus motion, in which he moved, among other things, to suppress "any and all evidence obtained by the State in violation of the defendant's rights as guaranteed by the 4th, 5th, 6th, and 14th Amendments to the Constitution of the United States and the Maryland Declaration of Rights," without specifying what, in particular, he wanted suppressed or giving any reasons why suppression was justified. The State responded that any statement made by petitioner was freely and voluntarily given and, to the extent it was the product of

custodial interrogation, the statement was made after petitioner had been fully informed of his Constitutional rights and had made a knowing and intelligent waiver of those rights.

At the hearing on the suppression motion, Detective Bailey testified to the facts set forth above with respect to his taking petitioner to the hospital and his later interrogation of him when they returned to the police station. Petitioner then testified that he was physically abused—beaten and choked—that he was threatened, that he had asked for a lawyer and been denied one, and that he was otherwise mistreated in a variety of ways. On the strength of that testimony, counsel argued that his statements were involuntary. Although he complained about the length of time petitioner was held as part of an additional argument that the arrest was invalid, he never complained about petitioner's having been held in violation of Rule 4-212(f) as that might bear on the voluntariness of his various confessions.[2] Obviously attaching no credibility to petitioner's testimony, the court denied the motion to suppress the statements.

The evidence adduced at the suppression hearing bearing on the confession to the Marriott Hotel robbery was repeated and admitted at trial, except that petitioner did not testify. At the end of the State's case and again at the end of the entire case petitioner renewed his motion to suppress the confession, which had already been admitted. No complaint was made in either instance about a violation of Rule 4-212, or the effect that any unnecessary delay in presenting petitioner to a

---

**2.** The thrust of petitioner's complaint in this regard was that, until his arrest, the police had no reason to suspect him of any criminal activity. He was arrested, he said, solely because Officer Long believed that he was Terrence Maith, and, once Detective Straughan advised that petitioner was not Maith, he should have been immediately released. The detention was unlawful, he claimed, because there was no probable cause to hold him, and that tainted all of the evidence, including the statements, that followed. As noted, petitioner also claimed that the statements were the product of beatings, threats, and other physical mistreatment. At trial, he pressed an argument that he had been denied food and hospital treatment until he made a statement to the liking of the police.

District Court Commissioner may have had in inducing the confession. Those motions were denied.

In its instructions to the jury, the court noted that evidence had been admitted regarding a statement made to the police, and it informed the jury that the State must prove beyond a reasonable doubt that the statement was freely and voluntarily made. The court instructed that, to be voluntary, the statement must not have been compelled or obtained as a result of any force, promises, threats, inducements, or offer of reward, and that, in making its determination, the jury was to consider all of the circumstances surrounding the statement, including, among other things, the length of time that the defendant was questioned. Nothing was said about the effect of any delay in presentment, because no such instruction had been requested. Nor did defense counsel, in his argument, mention any delay in presentment. His argument as to voluntariness, even in the absence of any supporting testimony from petitioner, was that petitioner had been beaten and that he had been denied food and hospital treatment until he confessed.

On November 2, 1995, the jury convicted petitioner of armed robbery and use of a handgun on the commission of a crime of violence. Sentencing, however, was delayed. In February, 1996, petitioner was tried in the Circuit Court for Howard County and convicted of two other armed robberies occurring in that county. Those convictions rested in large part on confessions petitioner made to Howard County Detective McGlynn, who had joined Detective Bailey at the Prince George's County police station on March 21, 1995.

Detective McGlynn, who was investigating a robbery that had occurred in January, 1995, testified that he arrived at the Prince George's County police station at about 7:00 on the morning of March 21, 1995, but that he did not enter the interrogation room until 6:00 that evening. Detective Bailey, from Prince George's County, and Detective Young, from Anne Arundel County, were already in the room with petitioner. McGlynn introduced himself, asked if petitioner was willing to talk, and, when petitioner responded affirmatively,

McGlynn read him his *Miranda* rights and obtained a written waiver of those rights. Petitioner then confessed to participating in an armed robbery that matched the one McGlynn was investigating. Detective Young typed a question and answer statement, which petitioner initialed and signed. McGlynn said that the questioning began about 6:15 p.m. and that the written statement was completed by about 7:15.

Only brief snippets from the Howard County trial are in the record before us. It appears, however, and is not denied by the State, that defense counsel in that case moved to suppress the statements as involuntary, arguing, among other things, that the delay in presentment following petitioner's arrival at the police station at 10:58 p.m. on March 20, was unnecessary and therefore a violation of Maryland Rule 4–212(f), that the delay exceeded 17 hours before the statements to McGlynn were made, and that the delay was a factor to be considered in determining whether the confessions were voluntary. Petitioner's motion to suppress was denied by the trial court and, as noted, petitioner was convicted.

The transcript of the suppression hearing in the Howard County case is not in the record before us. In petitioner's appeal from the judgment entered in that case, the Court of Special Appeals recited that the motions judge "suspected, and the officers testifying all but confirmed, that the Prince George's County police delayed charging [petitioner] for the purpose of his interrogation by a multitude of detectives from the surrounding jurisdictions." *Hiligh v. State, supra,* Nos. 314 and 315, Sept. Term 1996, Slip Opinion at 13. Although the appellate court recognized that, under Maryland Code, § 10–912 of the Courts and Judicial Proceedings Article, mere length of detention is not dispositive, and thus appeared to reject petitioner's argument that the long delay, coupled with the extensive interrogation, was "conclusive evidence of coercion," it found, from the record as a whole, that the statements were involuntary. It stated:

"Even if we accept the police testimony in its totality, and discount much of [petitioner's] own testimony, as did the motions court, we remain greatly disturbed by the conduct

of the police. Though the motions court was bothered by the length of the pre-charging detention and the interrogations, it felt that this was. 'somewhat mitigated in this Court's mind by the fact that there were substantial periods of time that Mr. Hiligh was left by himself.' We arrive at a different conclusion."

*Id.* at 15.

Quoting *Meyer v. State*, 43 Md.App. 427, 434, 406 A.2d 427, 433 (1979), the court noted that Maryland Rule 4–212 " 'does not countenance a delay for the principal purpose of obtaining a statement or a confession from the defendant,' " and it concluded from the record that "the Prince George's County police engaged in what amounts to a deliberate attempt to deprive [petitioner] of his right to prompt presentment to a judicial officer." *Id.* at 16. The court observed that, although there might be a number of acceptable reasons for a delay in presenting a suspect to a District Court Commissioner, "it is not the purpose of section 10–912 to provide the arresting officers a twenty-four hour 'carte blanc' to hold and interrogate a suspect as they see fit." *Id.* Thus, the court held:

"As the presumption is that confessions are involuntary, this inexcusable delay, taken with the other factors present, fails to overcome this presumption. After an examination of all the record, and especially those factors addressed by the motions court, we conclude that the conduct of the police was coercive. The admissions of both confessions were in error, and we cannot conclude beyond a reasonable doubt that the confessions did not influence the verdicts."

*Id.*

The Court of Special Appeals opinion was filed January 9, 1997. In March of that year, petitioner moved for a new trial in the Prince George's County case, based largely on the action of the Court of Special Appeals in the Howard County case. He urged that his motion should be granted under the theory of *res judicata.* The court heard argument and, on June 10, 1997, denied the motion, noting that the issue of the voluntariness of the Marriott Hotel confession had been sub-

mitted to the jury and that the court did not intend to substitute its judgment for that of the jury. What appears to be a confirmatory order to the same effect was filed August 7, 1997.

Upon the subsequent imposition of sentence, petitioner appealed, raising the same issue of voluntariness that was raised in the appeal from the Howard County convictions, hinged mostly on his complaint about physical abuse but including as well the delay in presentment. A different panel of the Court of Special Appeals rejected his claim that the statements admitted in the Prince George's County case were involuntary. With respect to the delay in presentment, the court noted:

"Finally, appellant argues that there is no indication in the record that he was taken to a commissioner until almost 24 hours following his detention. This claim was not preserved for our review because it was not presented to the motions judge and not considered by him. Appellant made no mention in his argument below of any delay in being taken before a judicial officer. Accordingly, this claim has been waived by appellant."

*Hiligh v. State, supra,* No. 1227, Sept. Term, 1997, Slip Opinion at 15–16.

The court went on to observe that, had the issue been preserved, § 10–912 of the Courts and Judicial Proceedings Article would have been applicable and that, under that statute, a delay in presentment is not dispositive but is to be considered with all other factors. *Id.* at 16. It pointed out that petitioner had argued the general effect of the time interval between his arrest and the confession, and that that argument was considered by the trial judge. *Id.* Addressing separately the motion for new trial and the effect of the appellate decision in the Howard County case, the court noted that the confession in that case came about four hours after the one in the Prince George's County case but that, in any event, the appellate decision in the Howard County case had no preclusive effect in the Prince George's County case.

Finding no other error, the court, in June, 1998, affirmed the judgment. *Id.* at 20.

In April, 1999, petitioner filed in the Circuit Court for Prince George's County a petition for post conviction relief, complaining that he was denied the effective assistance of counsel at the motions hearing and at trial because his attorney failed to argue "the legal significance of, or explore factually, evidence that the Petitioner was in custody and being interrogated for more than 24 hours before being taken before the District Court Commissioner." He noted the Court of Special Appeals comment in the Prince George's County appeal concerning counsel's failure to raise the issue, contrasted the appellate court's decision overturning the Howard County convictions, and contended that the facts of the interrogation and delayed presentment in both cases were identical. He urged that counsel's failure to raise the delay in presentment issue was prejudicial and that it significantly affected the outcome of the Prince George's County case.

The State filed a very general answer but, in a memorandum in support of its opposition to the petition, argued only that the issue of the voluntariness of the confession had been finally litigated, which is a basis for denying post conviction relief. *See* Maryland Code, Crim. Proc. Article, §§ 7–102 and 7–106; *see also Bryant v. Warden,* 235 Md. 658, 202 A.2d 721 (1964); *Buettner v. Superintendent,* 239 Md. 710, 212 A.2d 464 (1965). At a hearing on the petition, the parties stipulated that trial counsel, Mr. Jones, failed to raise the fact that petitioner had not been presented to a Commissioner until almost 24 hours after his arrest, either in his motion to suppress or at the hearing on that motion, that his failure to raise the issue was not a strategic or tactical decision but simply an omission on his part, and that petitioner did not waive that claim or instruct Jones not to raise it.

Although the petition was based entirely on ineffective assistance of counsel, petitioner argued at the hearing that the requirement of prompt presentment in Rule 4–212 was mandatory, that it cannot be waived, and that any statement made

by a defendant obtained during a period of unnecessary delay "is subject to exclusion when it's offered into evidence against the Defendant." That argument, he urged, had never been raised or decided in the underlying case. The State's response was that, under Maryland Code, § 10–912 of the Courts and Judicial Proceedings Article, delay in presentment is not a separate basis for excluding a confession but is simply one factor to be considered in determining whether the confession is voluntary. Additionally, the State argued that the issue of the delay and its effect on voluntariness was raised and decided in the context of the motion for new trial, that the Court of Special Appeals confirmed that was so, and, for that reason, the issue had been finally litigated.

In July, 2000, the court issued an opinion and order finding merit in the petition and granting petitioner a new trial. Although it seemed to find no error in the trial court's conclusion that the confession was voluntary, it found that counsel's failure to raise the presentment delay was deficient performance and was prejudicial to petitioner's defense. That "inference," the court said, "can be drawn based on the reasons for reversing the [Howard County] convictions." The court viewed the "facts of the interrogation and the delay in being brought before the Commissioner" in the two cases as "virtually identical," and it concluded that "[c]learly, the failure to raise the issue of delay establishes a prejudicial and significant effect on the outcome of the case because the convictions were reversed by the Court of Special Appeals."

The State sought and was granted leave to appeal that determination, and, in June 2002, the Court of Special Appeals, in a split decision, reversed. The court seemed tacitly to accept, without deciding, that the issue had not been finally litigated and that counsel's performance was Constitutionally deficient, but held that "it is not reasonably probable or possible that Hiligh's trial counsel's failure to advance an unnecessary delay in presentment argument materially affected the outcome of the suppression hearing, and therefore of the case." *State v. Hiligh*, No. 1378, Sept. Term 2000 (Opinion filed June 11, 2002) at 26. The appellate court concluded

that the trial court was "plainly wrong" in finding that the facts bearing on the delay in presentment were identical in the two cases, noting that the Howard County confessions came four hours after the one involving the Marriott Hotel robbery, and that that finding could not, therefore, support an inference of prejudice. *Id.* at 29. The Court of Special Appeals also determined that the post conviction trial court failed to analyze how and why it is likely that the outcome of the armed robbery trial would have been different had the unnecessary delay issue been presented at the suppression hearing. *Id.* at 30–31.

The appellate court acknowledged that, had petitioner's confession been ruled inadmissible, the outcome of the trial likely would have been different. *Id.* at 32. It simply did not believe that, had counsel argued the effect of the unnecessary delay, the confession would have been found involuntary and suppressed, and it was on that basis that the grant of post conviction relief was reversed. *Id.* at 34. The court held that "the rule requiring a defendant to be taken before a commissioner without unnecessary delay does not preclude police officers from questioning an accused, even if they have sufficient evidence to charge him with a crime and if they have indeed prepared the charging document." *Id.* at 50.

## DISCUSSION

The only defense raised by the State in the post conviction court—that the issue presented by petitioner had been finally litigated—is not before us. The Court of Special Appeals did not address that defense, but assumed that it had no merit, and the State did not raise it in a cross-petition for *certiorari.* The State did argue in its cross-petition, however, that trial counsel's failure to raise the presentment issue did not amount to deficient performance under *Strickland v. Washington, supra,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and we shall address that matter first.

■ In presenting that view, the State's initial argument seems to be that *Johnson v. State,* 282 Md. 314, 384 A.2d 709

(1978), in which we held the presentment requirement now embodied in Rule 4–212(f) to be mandatory, was wrongly decided and was, in any event, overturned by the Legislature when it enacted § 10–912. As we discussed in *Williams v. State,* 375 Md. 404, 825 A.2d 1078 (2003), a companion case argued the same day as this one, *Johnson* was *not* wrongly decided; nor were its basic underpinnings disturbed by the Legislature. We made clear in *Williams,* and we iterate here, that the requirement of Rule 4–212(e) and (f) that defendants be presented to a judicial officer without unnecessary delay and, in any event, within 24 hours after arrest remains extant and mandatory.

 *Williams* also establishes, as do *Meyer v. State,* 43 Md.App. 427, 406 A.2d 427 (1979) and *Young v. State,* 68 Md.App. 121, 510 A.2d 599 (1986), that delaying presentment in order to interrogate an accused for the purpose of extracting incriminating statements constitutes a violation of the Rule and that such a violation is a factor to be considered in determining the voluntariness of any resulting confession. To suggest that the failure of counsel to raise and argue such a violation is not deficient performance when (1) the facts demonstrate beyond cavil that the Rule was, in fact, violated, (2) the confession was a devastating piece of evidence, and (3) the failure was concededly one of oversight rather than a strategic or tactical decision, is wholly unwarranted. The post conviction court was correct in finding deficient performance.

 The question, then, is whether the intermediate appellate court erred in concluding that counsel's failure did not satisfy the prejudice prong of *Strickland*—that there was no substantial possibility that the outcome of the trial would have been any different had the issue been raised and argued, to the court at the suppression hearing and to the jury at trial.

In *Williams v. State, supra,* 375 Md. 404, 825 A.2d 1078, we examined the interplay between Maryland Rule 4–212(f) and § 10–912 of the Courts and Judicial Proceedings Article and determined how the two can be properly harmonized. The Rule is quite specific: it requires that an accused be taken

before a judicial officer "without unnecessary delay and in no event later than 24 hours after arrest." The statute provides that a confession may not be excluded from evidence solely because the defendant was not taken before a judicial officer within any time period specified in the Rule and that failure to comply with the Rule "is only one factor, among others, to be considered by the court in deciding the voluntariness and admissibility of a confession."

We observed in *Williams* that the statute, though overturning our conclusion in *Johnson v. State, supra,* 282 Md. 314, 384 A.2d 709, and *McClain v. State,* 288 Md. 456, 419 A.2d 369 (1980) that a violation of the Rule—even an inadvertent one—constituted a separate and independent *per se* ground for rendering a resulting confession inadmissible, did not attempt to modify the substantive requirement of the Rule that defendants be presented to a judicial officer without unnecessary delay. Nor did it detract from our holding that the requirement of the Rule was mandatory and that it was impermissible for the police to delay presentment for the purpose of extracting confessions through continued interrogation. The goal of the statute, we said, was "simply to eliminate a Rule violation as an independent ground, separate from voluntariness, for rendering a confession inadmissible." *Id.* at 429, 825 A.2d at 1092. Giving full credence to the statutory provision that an unnecessary delay in presentment is but one factor to be considered in determining whether a resulting confession was voluntary, we concluded that, when a delay in presentment was not only unnecessary but deliberate and for the sole purpose of extracting incriminating statements, it must be given special weight by a suppression court. The reason for that, we said, was that, when the right of presentment is so violated, "there may be no practical way of calculating the actual effect of the transgression." *Id.* at 430, 825 A.2d at 1093.

The conclusion of the Court of Special Appeals that Rule 4–212(f) "does not preclude police officers from questioning an accused, even if they have sufficient evidence to charge

him with a crime and if they have indeed prepared the charging document," at least to the extent that the questioning is for the purpose of extracting incriminating statements and not for any purely administrative purpose, is simply incorrect. It is flat-out inconsistent with that court's own rulings in *Meyer v. State, supra,* 43 Md.App. 427, 434, 406 A.2d 427, 433 and *Young v. State, supra,* 68 Md.App. 121, 134, 510 A.2d 599, 606, and is also at odds with *Johnson* and *McClain.* The Rule absolutely forbids police officers from such conduct and cannot reasonably be read in any other way. The only issue, prior to *Williams,* was the effect of such a violation on a resulting confession.

In order to establish prejudice from counsel's deficient performance, under a *Strickland* analysis, petitioner must establish "that there is a substantial possibility that, but for counsel's error, the result of his proceeding would have been different." *In re Parris W.,* 363 Md. 717, 727–28, 770 A.2d 202, 208 (2001); *see also Redman v. State,* 363 Md. 298, 310, 768 A.2d 656, 662 (2001); *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In this case, that translates to whether there is a substantial possibility that, had counsel raised and argued the delay in presentment as part of his attack on the voluntariness of the confession, either the suppression judge, ruling on admissibility, or the jury, in its ultimate determination of voluntariness, would have concluded that the various statements made by petitioner were involuntary.

In examining that question, we need to be cognizant of several things. First, there is no doubt that Rule 4–212(f) was violated in this case. The record demonstrates that the police had all of the information and had completed all of the administrative paperwork necessary to present petitioner to a District Court Commissioner by 3:30 a.m. on March 21, at the latest, and that a Commissioner was immediately available in the same building. All delay after that point, as a matter of both law and fact, was unnecessary. Second, it is clear, and really beyond dispute, that the delay was deliberate and was

for the sole purpose of extracting incriminating statements from petitioner. Third, even if we ignore entirely petitioner's claims of beatings, threats, injuries, and delayed hospital treatment, which both the trial court and the post conviction court found not to be credible, the undisputed fact is that, except for possible trips to the bathroom (none of which, if they occurred, were documented), petitioner was left alone in a small interrogation room, tethered to a one-foot cable attached to the wall, from as early as 11:00 p.m. on March 20, to about 7:15 a.m. on the 21st—over eight hours—and that, upon his return from the hospital at 8:35 a.m., he was questioned continuously for over five more hours before he confessed to the Marriot Hotel robbery. It is significant to note that, when Detective Bailey first began to question him, petitioner denied involvement in the offenses. Detective Bailey did not record that response, because he did not believe it.

Had counsel argued the coercive effect of the deliberate delay in presentment, the court would have been required to give that delay very heavy weight and examine whether the State had shouldered its heavy burden of proving that the confession was not induced by that coercion. On this record, especially in light of the conclusion reached by the Court of Special Appeals in the Howard County appeal, there is, indeed, a substantial possibility that the court, in ruling on the suppression motion, would have found the confession involuntary and ruled it inadmissible.[3] Even if the judge had allowed the confession into evidence, he would, under *Williams*, have been required, on request, to instruct the jury on the heavy weight to be accorded any deliberate and unnecessary delay.

---

3. The Court of Special Appeals dismissed too easily its decision in the Howard County appeal. Although it is true that the confessions to the Howard County robberies came about four hours later than the one to the Marriott Hotel robbery and, to that extent, the two situations were not "virtually identical," they had a much closer affinity than the Court of Special Appeals was willing to recognize. They were both the product of a deliberate violation of the Rule and the confessions were extracted under the same coercive circumstances that we have described. Under a *Williams* analysis, the Rule violation would have been entitled to very heavy weight in determining voluntariness.

Furthermore, had counsel argued that point to the jury, there is the same substantial possibility that the jury would have found the confession involuntary and, in accordance with the judge's other instructions, disregarded it.

For these reasons, we believe that the Court of Special Appeals erred in reversing the order entered by the Circuit Court.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE ORDER OF CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.