IOZZI *v.* STATE

[No. 81, September Term, 1960.]

*Decided December 21, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Lawrence E. Ensor,* for appellant.

*Robert C. Murphy, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Frank H. Newell, III* and *Samuel A. Green, Jr., State's Attorney* and *Assistant State's Attorney for Baltimore County,* respectively, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was tried and convicted of carrying a concealed dangerous or deadly weapon and sentenced to two years' imprisonment, the maximum sentence under Code (1957), Art. 27, sec. 36. He was represented by counsel of his own selection, pleaded not guilty, and elected a court trial. In this appeal, where he is represented by court-appointed counsel, he challenges the sufficiency of the evidence to convict and particularly the evidence to establish venue. He further contends that the court erred in hearing his motion for new trial in the absence of defense counsel.

We find no insufficiency in the evidence. Two Baltimore County policemen, on duty in a car, were ordered to proceed to the Teen Age Center at the Arbutus Elementary School to investigate a report of a disturbance there and that "[a] man was suspected of having a gun." They testified that they saw the accused drop a pistol on the ground at the parking lot of the Arbutus Elementary School just prior to his arrest. The witness, Covill, adult counsellor at the Center, testified he saw the accused take the pistol from his pocket before he dropped it. The pistol was picked up by one of the officers and found to be loaded. The appellant testified that the pistol belonged to one of the boys, seventeen years old, whom he had accompanied to the Center as a peacemaker in a previous fight with other boys. The trial court believed the testimony of the witnesses for the State and did not believe the testimony of the accused denying ownership or possession of the pistol or the testimony of other defense witnesses to the same effect. We cannot find that the trial court was clearly wrong.

The claim that venue was not established rests upon a certain ambiguity in Covill's answer to a question whether the

Arbutus Elementary School was in Baltimore County. He replied: "Yes, sir. I do live in Baltimore County." Apart from the inference that Baltimore County police officers would not be sent outside the County to investigate an alleged breach of the peace, we think the trial court could infer that the witness was stating a geographical fact as to the locus of the offense stated in the information and that the added sentence was merely explanatory of his means of knowledge. Moreover, it is generally held that geographical facts of a local nature may be judicially noticed by a trial court to establish venue. See 1 Wharton, *Criminal Evidence,* §§ 59, 92 (12 ed. 1955), and 9 Wigmore, *Evidence,* § 2575 (3d ed. 1940), and cases cited. This is particularly true as to the location of towns within a particular county where the court sits. *McClain v. Commonwealth,* 55 S. E. 2d 49, 52 (Va.); *State v. Ragland,* 246 P. 2d 276, 282 (Kan.); *Turner v. Alton Banking & Trust Co.,* 181 F. 2d 899, 903 (8th Cir.), and 20 Am. Jur., *Evidence,* § 53. Cf. *Dean v. State,* 205 Md. 274, 280. We think the trial court could properly take judicial notice that the town of Arbutus is within the territorial limits of Baltimore County.

After the trial court announced the verdict of guilty on January 29, 1960, counsel for the accused, Mr. Hurwitz, asked the court to "withhold sentence upon the request of my client for the purpose of filing a motion for a new trial". It seems to be a fair inference that the appellant's trial counsel was merely keeping the door open for his client to file the motion himself but did not propose to file it for him. The appellant was a mature man not unfamiliar with court procedure. He had a long record of criminal convictions over a period of some fifteen years and had served time in the Federal prisons at Atlanta and Alcatraz. There is no suggestion that he was mentally incompetent to make the arguments at the hearing of the motion in proper person. The court complied with this request of counsel, remanding the appellant to the Baltimore County Jail pending a hearing of the motion. On February 2, the appellant filed a motion for new trial in proper person. The record shows that on February 26, the court passed an order committing the appellant to Spring Grove State Hos-

pital for inquiry into his mental capacity to conduct properly his defense. The order recited that this was because of "events occurring subsequent to his trial", presumably at the jail. The record does not contain a report from the hospital authorities, but on petition of the State's Attorney the court passed an order on March 17, 1960, for his return to the Baltimore County Jail. A hearing on the motion for new trial was held on March 22, 1960. The motion was denied and sentence to two years in the House of Correction was passed at that time. The record contains an order, or recommendation, dated March 22, 1960, committing him to Patuxent Institution for examination as a defective delinquent, but it would seem that he was sent to the House of Correction, for on March 24, 1960, and again on March 28, 1960, by letters from the House of Correction he sought an appeal to this Court and the appointment of counsel as an indigent. His present counsel was then appointed.

In the appellant's statement as to the "reasons for the appeal", he complained that the trial court "sent me to Spring Grove State Hospital for observation to see if I was insane. Which four (4) Psychiatrists said that I was sane, * * *. The head Psychiatrist notified his Hon. that I was sane also." He complained of his treatment at the Hospital. Obviously, these are matters not reviewable on this appeal.

He also claimed that the trial court "failed to render me my constitutional rights to have my attorney present at the trial on March 22nd, 1960. And also failed to allow me time to notify my attorney before the trial." The reference is obviously to the hearing upon the motion for a new trial, at which the appellant states that he was present in person. We have already noted the inference that Mr. Hurwitz had severed his connection with the case upon the conclusion of the original trial and before the filing of the motion, and we further infer that this is the reason why he was not present at the hearing of the motion and why he was not notified of it (assuming the appellant's statements as to these matters to be correct). There is nothing in the record to show that the appellant requested the trial court to notify Mr. Hurwitz to be present, or to continue the case to enable him to obtain new

counsel, or to appoint counsel to represent him at the hearing, notwithstanding the fact that more than three weeks elapsed between the time of the filing of his motion for a new trial and the time of his being sent to Spring Grove. In the absence of anything to show a request to the trial court or a ruling thereon, there is nothing before us to consider. Maryland Rules 826 b and 885. If the experienced counsel appointed to represent the appellant on this appeal had thought that the point was meritorious, it was incumbent upon him to make the record show what actually occurred, and we do not doubt that he would have done so. Cf. *Roberts v. State,* 219 Md. 485, 488.

On the record before us, we do not reach any constitutional question as to the right of the appellant to have counsel at the argument of his motion for a new trial.

*Judgment affirmed.*