468 A.2d 688

**Burl Anderson HOWELL**

v.

**STATE of Maryland.**

**No. 272, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Dec. 15, 1983.

---

3. The agreed statement of facts was not made a part of the record.

Gary S. Offutt, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender of Maryland on brief, for appellant.

Diane G. Goldsmith, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., John L. Scarborough, State's Atty. for Cecil County and Paul S. Podolak, Former State's Atty. for Cecil County on brief, for appellee.

Argued before MOYLAN, LOWE and GARRITY, JJ.

MOYLAN, Judge.

The appellant, Burl Anderson Howell, was convicted by a Cecil County jury, of being an accessory after the fact to murder. Upon this appeal, he raises the following nine contentions:

1. That the trial judge erroneously failed to suppress his oral admissions;

2. That the trial judge erroneously prevented him from impeaching a State's witness with prior inconsistent statements;

3. That the trial judge erroneously permitted the State to impeach its own witness;

4. That the trial judge erred by failing to instruct the jury that if it believed the principal in the first degree had acted in self-defense, then there would be no underlying felonious homicide and the appellant could not be guilty as an accessory after the fact;

5. That the trial judge erred in permitting one David Linkey to testify for the State;

6. That the evidence was not legally sufficient to support the convictions;

7. That the appellant's sentence was illegal;

8. That the appellant was impermissibly punished for asserting his right to appeal; and

9. That the appellant's retrial in this case constituted double jeopardy.

■ We decline to consider the double jeopardy claim. The appellant failed utterly to raise this issue at the trial now under review and nothing is, therefore, preserved for appellate review. Md.Rule 1085. The succor he seeks in *Carbaugh v. State,* 294 Md. 323, 449 A.2d 1153 (1982), is simply not to be found there. That case established that the requirement of Md.Rule 736 a 1 that certain motions be raised pretrial lest they be deemed waived would not apply to all double jeopardy-related claims.

To be sure, a casual reading of the opinion of this Court in *Carbaugh v. State,* 49 Md.App. 706, 435 A.2d 116 (1981), coupled with its reversal by the Court of Appeals in *Carbaugh v. State,* 294 Md. 323, 449 A.2d 1153 (1982), could lead the unwary to believe, as the appellant here urges, that a double jeopardy claim can be raised for the first time on appeal. A more careful reading, on the other hand, does not yield such an insidious conclusion. The five-and-one-half page opinion authored by Judge Thompson for this Court in *Carbaugh v. State,* 49 Md.App. 706, 435 A.2d 116 (1981), dealt almost exclusively with the failure of the defendant in that case to raise the double jeopardy issue by way of pretrial motion under Md.Rule 736. We held that such failure amounted to a waiver of the claim for purposes of subsequent appellate review. All of the legal analysis dealt with that issue, and that was the holding for which the case stood. Almost by way of passing afterthought, we concluded the opinion with the single sentence:

"Also, the question was not presented in any manner to the trial judge and therefore is not before us under Md.Rule 1085." 49 Md.App. at 711, 435 A.2d 116.

Other than one other issue not related to waiver or forfeiture and not here pertinent, the Court of Appeals granted certiorari to deal with the limited question:

"1. Does failure to file a timely motion to dismiss pursuant to Maryland Rule 736 waive the defense of double jeopardy?" 294 Md. at 327, 449 A.2d 1153.

The Court of Appeals did not deal even remotely with the admittedly casual, albeit arguably alternative, holding of this Court that the failure to raise the double jeopardy issue at trial would preclude appellate review, even if the failure to raise it pretrial did not. The Court was not unaware of this "backstop" position that might have been, but was not, taken by the State, for it very carefully pointed out, "The State filed no cross-petition." 294 Md. at 327, 449 A.2d 1153. The Court of Appeals rather treated our decision as having dealt with the following issue exclusively, as essentially it had:

"The intermediate appellate court held that Rule 736 a. 1. encompassed a double jeopardy claim, and that Carbaugh's failure to file a timely pre-trial motion under the rule constituted a complete waiver of his double jeopardy contention." 294 Md. at 326, 449 A.2d 1153.

A careful reading of the two opinions in conjunction, therefore, yields the more narrow construction that the only thing considered by the Court of Appeals and the only thing held by the Court of Appeals was that the failure to raise certain double jeopardy issues by way of pretrial motion under Md.Rule 736 would not *ipso facto* bar appellate review:

"Nevertheless, at least absent a knowing and intelligent relinquishment of the claim, the double jeopardy claim may be raised on an appeal from the final judgment *regardless of whether a pretrial motion had been made.*" 294 Md. at 328, 449 A.2d 1153 (Emphasis supplied).

Md.Rule 1085 and its counterpart, Md.Rule 885, provide, in pertinent part:

"This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court. . . ."

The two extraordinary exemptions from that limitation, suggested by the adverb "ordinarily" within the limitation, deal exclusively with 1) points or questions of law presented to the court below even though not ruled upon and 2) the jurisdiction of the circuit court to hear the case. Neither of those exemptions is here involved.

The sound philosophy embodied in this fundamental limitation upon the appellate function was thoughtfully discussed by Judge Powers in *Braun v. Ford Motor Company,* 32 Md.App. 545, 548–549, 363 A.2d 562 (1976):

> "*We know of no principle or practice under which a judgment of a trial court may be reversed or modified on appeal except for prejudicial error committed by the trial judge.* It is a misuse of language to label as error any act or failure to act by a party, an attorney, a witness, a juror, or by anyone else other than the judge. In other words, error in a trial court may be committed only by a judge, and only when he rules, or, in rare instances, fails to rule, on a question raised before him in the course of a trial, or in pretrial or post-trial proceedings. *Appellate courts look only to the rulings made by a trial judge, or to his failure to act when action was required, to find reversible error.*
>
> This philosophy finds expression throughout the appellate process and specifically in Maryland Rules 885 and 1085, which provide that the appellate courts will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court, and further by the judicially expressed rule that the appellate court will consider only contentions raised and argued in the briefs. See *Fidelity & Deposit Co. v. Mattingly Lumber Co.,* 176 Md. 217, 4 A.2d 447 (1939); *Harmon v. State Roads Comm.,* 242 Md. 24, 217 A.2d 513 (1966); *Ricker v. Abrams,* 263 Md. 509, 283 A.2d 583 (1971)." (Emphasis supplied).

Indeed, where the two aforementioned exemptions from the limitation are not involved, the appellate court is with-

out power to consider the issue. In discussing the legislative source of the basic limitation, the Court of Appeals observed in *Hamilton v. State,* 127 Md. 312, 313, 96 A. 523 (1916):

"By section 9 of Article 5 of the Code this Court in civil cases has long been prevented from deciding on appeal any point or question which does not certainly appear by the record to have been tried and decided by the Court below; and this Court has held in *Mitchell v. State,* 82 Md. 527 [34 A. 246], that this section is applicable to criminal as well as civil cases."

In *Medley v. State,* 52 Md.App. 225, 448 A.2d 363 (1982), Judge Wilner thoroughly traced the history of this "limitation on appellate review that is of long standing in Maryland." 52 Md.App. at 230, 448 A.2d 363. He identified the source of the limitation as the Acts of 1825, ch. 117 and surveyed the undeviating adherence to that limitation by the Court of Appeals and by this Court alike. Representative statements of that adherence abound. Thus, Judge Henderson in *Iozzi v. State,* 224 Md. 42, 46, 166 A.2d 257 (1960), "In the absence of anything to show a request to the trial court or a ruling thereon, there is nothing before us to consider. Maryland Rules 826 b and 885." Thus, Judge (later Chief Judge) Hammond in *Kirby v. State,* 222 Md. 421, 425, 160 A.2d 786 (1960), "Here there is not only waiver but also no point made or passed on below for the appellate court to review. The right allegedly violated, not having been asserted below, may not be resurrected as a ground for relief on appeal." Thus, Judge Oppenheimer in *Tucker v. State,* 237 Md. 422, 425, 206 A.2d 691 (1965), "Even had the contents of Spencer's petition been properly included in the record before us, both the appellant and Spencer were represented by counsel at the trial below, and the confession which Spencer alleges in his petition was involuntary, was admitted without objection. An objection can not be made for the first time upon appeal. Rule 885."

In dealing squarely with the issue of double jeopardy itself, Chief Judge Prescott, speaking for the Court, was

emphatic in *Hewitt v. State,* 242 Md. 111, 114, 218 A.2d 19 (1966):

> "Since no questions concerning double jeopardy or denial of due process were raised below, we hold that these questions are not now properly before us. Maryland Rule 885; *Martel v. State,* 221 Md. 294 [157 A.2d 437]."

Our appellate function is to determine whether the trial judge committed error. In the case before us and on the issue of double jeopardy, he could not have committed error, for no issue in this regard was ever presented to him. There was simply no opportunity to commit error and there is, therefore, no decision of the trial judge before us for review. The reasons for this limitation were well set forth by Judge Wilner in *Medley v. State, supra,* at 52 Md.App. 231, 448 A.2d 363:

> "It is a matter of basic fairness to the trial court and to opposing counsel, as well as being fundamental to the proper administration of justice; and one need only look at the extensive annotations to Maryland Rules 885 and 1085 to see that it is rigorously enforced. Even errors of Constitutional dimension may be waived by failure to interpose a timely objection at trial."

■ With respect to issues that have been preserved for appellate review, however, the appellant has a very valid contention with respect to the failure to instruct the jury on the subject of self-defense. That failure causes us to reverse the conviction. It is an essential and affirmative element of the crime of accessoryship-after-the-fact that the State show "[a] completed felony . . . committed by another prior to the accessoryship." *Cooper v. State,* 44 Md.App. 59, 65, 407 A.2d 756 (1979). The putative principal in the first degree for the homicide in question was State's witness David Linkey. Linkey, to be sure, had on an earlier occasion entered a plea of guilty to murder in the second degree. That docket entry, however, is not dispositive for purposes of the present case; absent an agreed statement of fact, the State has the affirmative burden of showing the underlying

crime. In this case, Linkey testified to having killed the victim but answered unequivocally, in response to the artfully phrased questions of the appellant's attorney on cross-examination, that he killed in self-defense.

■ An overview of the trial testimony in full context makes his version of the homicide well-nigh incredible as a matter of fact, but not necessarily so as a matter of law. The bottom line is that a *prima facie* case of self-defense was generated and the appellant was, upon his proper request, entitled to a jury instruction on this issue. His failure to receive it was fatal error. If the jury in this case believed that Linkey was not guilty of felonious homicide because of self-defense, they would have been required to acquit the appellant of accessoryship-after-the-fact.

Our disposition of the case on this ground makes it unnecessary to deal with the numerous other contentions raised by the appellant. Ordinarily, his claim with respect to the legal insufficiency of the evidence would be considered, notwithstanding the reversal on other grounds, for guidance by the trial court should the State elect to retry and should the appellant raise a double jeopardy plea under *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

■ In the strange posture of this case, however, the challenge to the sufficiency of the evidence has not been preserved for appellate review. It is well settled, of course, that there must be in a jury case a timely motion for acquittal in order for an appellate court to review the legal sufficiency of the evidence. *Tull v. State,* 230 Md. 152, 186 A.2d 205 (1962); *Wersten v. State,* 228 Md. 226, 179 A.2d 364 (1962). In this case, the appellant moved for a judgment of acquittal when the State first rested its case. That motion was denied. Md.Rule 756 a would ordinarily then come into play, with its provisions that:

> "At the close of the evidence offered by the State, a defendant may move for a judgment of acquittal on one or more counts, or one or more degrees of an offense

which by law is divided into degrees. If the motion is not then granted, the defendant may offer evidence, but if so, he withdraws his motion."

The appellant elected not to testify and the defense rested its case without calling witnesses or otherwise mounting a defense. Redundantly, it renewed its motion for a judgment of acquittal. The renewal, of course, was not necessary, since the earlier motion had not been withdrawn by any offer of evidence. At that point, the procedural predicate for an appellate challenge to the sufficiency of the evidence had indisputably been laid.

▮ There then occurred an incredible procedural tangle. The State sought to call an additional witness, initially characterizing this witness as a rebuttal witness. The defense objected quite properly, for there had been nothing to rebut. Out of the presence of the jury, an at-times heated argument took place over the fact that defense counsel had known of the State's intention to call the additional witness, that they had apparently acquiesced, and that there was a general gentlemen's understanding that there would be no objection. With everybody denying bad faith, the discussion moved on to the issue of what would be the best method to permit the calling of the witness. The court concluded that, at the request of the State, it would exercise its discretion and permit the State to reopen its case in chief. Although the court noted that the defense had suffered no prejudice and that nothing had happened in front of the jury between the first closing of the State's case and its subsequent reopening, we hasten to note that the propriety of the reopening is not an appellate contention before us. We, therefore, intimate nothing with respect to that propriety. Accepting it, as we must, as a *fait accompli,* we simply note that the State's case in chief was reopened and that additional evidence was presented.

This made the earlier motion for judgment of acquittal a nullity. The only way to assess the legal sufficiency of the State's case is at the point when all of the State's evidence in chief has been produced. There was no motion for

judgment of acquittal when the State finally rested its reopened case. The limited function of appellate review is to monitor the system for judicial error. It is self-evident that the trial judge cannot possibly have erred in making a quantitative assessment of the State's evidence when he never made such a quantitative assessment at the only time it counted, when he was never called upon to make such a quantitative assessment and when he was under no obligation and indeed lacked the authority to make such a quantitative assessment *sua sponte.* The judicial machinery cannot, by definition, possibly malfunction when it has never been called upon to function. There is in this regard, therefore, nothing before us for appellate review. Md.Rule 1085.

JUDGMENT REVERSED AND CASE REMANDED FOR RETRIAL; COSTS TO BE PAID BY CECIL COUNTY.