851 A.2d 551

**Bobby Eugene TAYLOR**

v.

**STATE of Maryland.**

**No. 106, Sept. Term, 2003.**

Court of Appeals of Maryland.

June 10, 2004.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner/cross-respondent.

Gary E. Bair, Sol. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for respondent/cross-petitioner.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

CATHELL, Judge.

Bobby Eugene Taylor, petitioner, was tried by a jury in the Circuit Court for Frederick County, with Judge Edward Dwyer, Jr. presiding, and was convicted of child abuse, a second degree sexual offense and a third degree sexual offense. On June 26, 2002, petitioner was sentenced to twenty years of incarceration for the second degree sexual offense, with all but twelve years suspended. Petitioner received concurrent sentences of twelve years of incarceration for the

child abuse offense and five years of incarceration for the third degree sexual offense.

Petitioner filed an appeal to the Court of Special Appeals, presenting four questions for its review. In an unreported opinion, the Court of Special Appeals affirmed the trial court's rulings. Petitioner then filed a Writ of Certiorari and this Court granted it on December 18, 2003. *Taylor v. State,* 379 Md. 98, 839 A.2d 741 (2004). The sole question petitioner presents for our review asks:

"Did the trial of petitioner constitute a violation of the double jeopardy clause after the trial judge declared a mistrial over petitioner's objection and without manifest necessity?"

We hold that petitioner failed to preserve the double jeopardy issue for review because no objections or motion to dismiss based on double jeopardy were raised in the trial court in this case (or in the original case). The double jeopardy issue was first presented on appellate review. Because we hold that the double jeopardy issue was not properly preserved, we do not resolve the issue of manifest necessity. We also need not resolve the issue of whether a defendant is bound by his counsel's decision to consent to a mistrial where the defendant opposed any delay in the initial trial.

## I. Facts

The record in the case *sub judice* contains detailed facts about the underlying crimes with which petitioner was charged. Being that the sole issue in this case asks whether the mistrial and subsequent retrial of petitioner violated his Fifth Amendment right not to be put in jeopardy twice for the same offense and does not turn on the underlying facts of the crime, we will not include those substantive facts here.

On April 2, 2001, petitioner was indicted by a Frederick County grand jury on the charges of child abuse, second degree sexual offense and third degree sexual offense based upon alleged incidents involving his stepson's daughter. On September 10, 2001, the jury for petitioner's trial was sworn,

opening statements were made and testimony was taken before adjournment for the day. The following day, September 11, 2001, the trial judge announced that the courthouse was being closed due to the national emergency caused by the terrorist attacks in New York, Virginia and Pennsylvania. The transcript of the morning of September 11, 2001, reflects the following dialogue:

THE COURT: ... [W]e just received word due to the basically national emergency the, ... whatever occurred in New York and the Pentagon, that the County Government is closing down, if not now, within the next 10 minutes. We're not sure of the exact time. But, that means we have to close.[1]

[Defense Counsel] and [Prosecutor], we don't know what's going to happen next. . . . [I]t's my understanding, [Defense Counsel], rather than bring these jurors back we know not for how long you are not objection [sic], you have no difficulty with my declaring a mistrial in this case not caused by either party.

[DEFENSE COUNSEL]: That's—

THE COURT: And if I did that [petitioner] would have to understand that he could be retried.

[DEFENSE COUNSEL]: Your Honor—

THE COURT: And it would be a different jury.

[DEFENSE COUNSEL]: Your Honor, ... that's correct. . . . [T]hat is my understanding that the, you know, I understand the Court's ... and our predicament in terms of the Court being closed, and the fact that jurors would probably more likely have problems coming back the additional two days anticipated by the Assistant State's Attorney in this case.

I've explained to [petitioner] all of those issues, and how it is that we arrived at this point. . . . [I]n view of all of that

---

1. County governments have no power to close courts. The closing of court operations is an exclusive function of the judiciary.

[petitioner] understands, but he would like to address the Court very briefly.

THE COURT: Only, only on the issue of the mistrial. I don't know what he wants to say, and whether it's appropriate for him. Do you know what he wants to say, [Defense Counsel]?

[DEFENSE COUNSEL]: Your Honor, I, I think he just wants to indicate that he has a . . . due to his condition that he would like for everything to be over as quickly as possible, and that he is concerned, he's saying that because of his condition that he will worry and worry and worry until—

. . .

. . . this has come to a conclusion.

THE COURT: Do you then prefer that I just recess today and try to bring it back tomorrow?

[PETITIONER]: Yes.

[DEFENSE COUNSEL]: That's what [petitioner] would like to do.

THE COURT: [Defense Counsel], what's your position?

[DEFENSE COUNSEL]: Your Honor, I have some concerns that I, you know, as I stated back in Chambers. My concern would be again that the witnesses, not the witnesses, but the jurors, uh, we're going to have this interruption of today and possibly tomorrow, we don't know what tomorrow's going to bring. So now we have a jury that's, uh—

THE COURT: That's basically called, was told two days, that we'd finish today.

[DEFENSE COUNSEL]: Correct. Now they would have to anticipate, perhaps change their schedules. In the final analysis we don't, we don't know how any of those, the people on the jury might be affected by this, . . . by the events of today. So I'm concerned as whether or not this jury is going to be able to focus sufficiently after such a hiatus and other . . . issues now confronting us.

... [Y]ou know ... that's my belief. [Petitioner] does have a desire to get the case over as quickly as possible.

THE COURT: Well I can understand that. [Prosecutor], what's the State's position?

[PROSECUTOR]: Your Honor, uh, I understand that there are, uh, two, I think it's wise that to predict that this matter would continue on for another two days at least or at least part of the second day. I understanding [sic] that there are two jurors who have difficulty proceeding in that manner.

. . .

[PROSECUTOR]: My concern is that we leave, that if we loose [sic] two we are left with no alternates, and given what's going on that there may be occasion we might loose [sic] one more juror, and that we would be in the same position two days from now, so, uh—

THE COURT: What's the State's position?

[PROSECUTOR]: I think it's prudent to proceed in the manner that Your Honor (inaudible).

THE COURT: All right, [Defense Counsel], anything else?

[DEFENSE COUNSEL]: (No response)." [Alterations added.]

Directly following this discussion, the record reflects that petitioner addressed the court. The following dialogue, ending in Judge Dwyer declaring a mistrial, occurred:

"[PETITIONER]: All right, Your Honor, I've been, uh, you know my ... mental condition, I won't discuss it. I've been pressured with this for 14 months now. And all a mistrial can do is give the prosecution more time, and 10 years, 15 years from now she can bring the same case back up, and all this time that will be held over my head.

THE COURT: Well, first if it's a mistrial it's going to be reset as soon as possible. We're not talking 10 or 15 years, we're talking less than six months.

[PETITIONER]: That will violate my rights.

THE COURT: Well (inaudible)—

[PETITIONER]: They've already been violated one time.

THE COURT: Well, that's a different matter about the first one. But I will tell you this, if it's for this reason it's not going to violate your right, because this is completely out of control of anybody. Do you understand that?

[PETITIONER]: No, sir, I don't.

[DEFENSE COUNSEL]: You understand that the Court is closing not because the Court has said so, but the County Commissioner[s].

THE COURT: And not because of [the] State. I didn't close the Court. I mean, I can tell you that the Governor just declared a state of emergency, that Frederick County is shutting down, that Washington County has already shut down, and that's completely beyond my control or your control or [the Prosecutor's] control.

[PETITIONER]: Could it be made a point of the record that I, uh, don't want the dismissal, that I ask for the dismissal?

THE COURT: Well, neither of you are asking for a dismissal or—

[PETITIONER]: I'm requesting that it doesn't happen. I'm not asking for it.

THE COURT: You want me, you want me to continue this trial today with the Governor and everybody shutting it down, the Government down?

[PETITIONER]: I want the trial continued, because I know what the prosecution's going to do.

THE COURT: Well, that's a different matter, but. All right, anything else, [Defense Counsel]?

[PETITIONER]: They've already bought an extra six months.

THE COURT: [Defense Counsel], anything else?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: [Prosecutor], anything else?

[PROSECUTOR]: Nothing further, Your Honor.

THE COURT: In this case I am going to declare a mistrial, and declare it's based on a national emergency, we don't know what's going on in New York, what we hear is not good. We don't know what's going on in D.C. we hear it's not good. We do know that my delay in getting on the bench is because we were waiting to see whether we can stay open, we cannot. I told Counsel I would have stayed open, but we just got word that we must shut down. Uh, jurors have difficulty returning on Wednesday and Thursday, at least [two] of them, we don't know whether we'll be able to at this point, because we don't know what's going on.

This is a mistrial declared, because of manifest necessity, it is a good cause continuance. Refer to the assignment office for setting a new trial date ... as soon as possible. . . .

Court's adjourned." [Alterations added.]

On November 7, 2001, within two months of Judge Dwyer's granting of a mistrial, a new jury was sworn and the retrial began. The retrial concluded on November 9, 2001. During the retrial, petitioner did not raise any double jeopardy issue. The jury found petitioner guilty on all three counts.

Petitioner filed a motion for a new trial and supplemented it several times. The motion was heard and denied by Judge Dwyer on June 26, 2002. Petitioner again failed to include any double jeopardy argument within this motion or any supplement, and, instead, specifically noted the necessity for the mistrial, stating, in his written "Supplement to Motion for New Trial," that, "The terrorist attack on September 11, 2001, necessitated a mistrial." Judge Dwyer subsequently sentenced petitioner to twelve years on the child abuse conviction. In addition, he sentenced petitioner to twenty years of incarceration (with all but twelve years suspended) on the second degree sexual offense conviction and five years of incarceration on the third degree sexual offense, both to be served concurrently with the sentence for the child abuse conviction.

## II. Discussion

The central issue raised in the Petition to this Court was whether petitioner was twice put in jeopardy for the same offense due to the trial court's grant of a mistrial on account of the uncertainty regarding the tragic national events that occurred on September 11, 2001. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects individuals from being tried for the same offense more than once, as it states, in part, ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ." The Fifth Amendment is applicable to the states through the Fourteenth Amendment of the United States Constitution. *See Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969). Similarly, despite the lack of a double jeopardy clause in the Maryland Constitution, the Maryland common law provides protection to individuals from being twice put into jeopardy. *State v. Woodson,* 338 Md. 322, 327–28, 658 A.2d 272, 275 (1995); *Flaherty v. State,* 322 Md. 356, 365, 587 A.2d 522, 526 (1991); *Gianiny v. State,* 320 Md. 337, 342, 577 A.2d 795, 797 (1990); *Randall Book Corp. v. State,* 316 Md. 315, 323, 558 A.2d 715, 719 (1989). This protection against being twice put into jeopardy prohibits three distinct abuses: 1) the second prosecution for the same offense after acquittal; 2) the second prosecution for the same offense after conviction for that offense; and 3) the imposition of multiple punishments for the same offense. *State v. Jones,* 340 Md. 235, 242, 666 A.2d 128, 131 (1995); *cert. denied,* 516 U.S. 1173, 116 S.Ct. 1265, 134 L.Ed.2d 213; *see also State v. Griffiths,* 338 Md. 485, 489, 659 A.2d 876, 878–79 (1995); *Woodson,* 338 Md. at 328, 658 A.2d at 275 (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *rev'd on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). In the case *sub judice,* if the issue had been preserved, we would be concerned with a variation of the first type of potential abuse, whether the trial court's granting of a mistrial, which petitioner's counsel did not oppose, although petitioner, himself, did, and the subsequent retrial

constituted a second prosecution for the same offense, *i.e.,* whether there was an improper grant of a mistrial by the trial court.

In *State v. Woodson, supra,* this Court set out the parameters to consider where a mistrial may affect an individual's double jeopardy rights, when we said:

"The double jeopardy prohibition against retrial for the same offense attaches in a jury trial when the jury is empaneled and sworn. *See Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973); *Blondes v. State,* 273 Md. 435, 444, 330 A.2d 169, 173 (1975). Thus, after jeopardy attaches, retrial is barred if a mistrial is declared without the defendant's consent unless there is a showing of 'manifest necessity' to declare the mistrial. *See United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824) (holding that a trial court may discharge a jury without the defendant's consent whenever 'taking all the circumstances into consideration, there is a manifest necessity for the act'). Although there is no clear test to determine whether a manifest necessity exists, it has been held that there must be a ' "high degree" [of necessity] before concluding that the mistrial is appropriate.' *Arizona v. Washington,* 434 U.S. 497, 506, 98 S.Ct. 824, 831, 54 L.Ed.2d 717, 729 (1978) (footnote omitted)."

*Woodson,* 338 Md. at 329, 658 A.2d at 276.

Petitioner argues that the trial judge improperly declared a mistrial without his consent and that the mistrial was not based on manifest necessity, thus the retrial violated his protections against being placed in jeopardy twice. First, petitioner argues that, although his attorney at trial initially acquiesced to the trial court's decision to declare a mistrial, his attorney did not speak after petitioner, himself, vehemently opposed the mistrial. He also, for the first time on appeal and in his brief before this Court, argues that his position against the mistrial served as an official objection on the record to the granting of the mistrial. Petitioner further contends that the mistrial was not manifestly necessary because he claims that

the facts support that a mere continuance would have been a sufficient alternative to a mistrial and the mistrial could only be declared, in light of petitioner's objection to it, in urgent or extraordinary circumstances.

The State first argues that the position of petitioner's counsel in agreeing with the need to declare a mistrial controls because strategic decisions are to be governed by the attorney, even where the attorney's client is not in agreement, especially, as in this case, where the "decision to consent to the mistrial was a tactical one within the province of the attorney." Second, the State contends that petitioner's claim that his double jeopardy rights were violated was never raised in the trial court or at the retrial and that Maryland Rule 8–131(a) precludes an appellate court from ordinarily deciding issues not raised below. Alternatively, the State contends that even if the issue was properly preserved, the trial court properly exercised its discretion when it declared a mistrial for manifest necessity due to the events of September 11, 2001.

There is no need for this Court, however, to discuss extensively whether the trial court properly declared a mistrial for manifest necessity, or whether petitioner's counsel's acquiescence to the declaration of a mistrial binds petitioner to that position in light of his personal opposition, because we hold that petitioner failed to preserve his objection to the retrial as being in derogation of his Federal Constitutional or State common law rights against twice being placed in jeopardy, as is required by Maryland Rule 8–131(a).

### Maryland Rule 8–131(a)

Maryland appellate courts have consistently held that, pursuant to Maryland Rule 8–131(a), and its predecessors, Rules 885 and 1085, appellate courts will not ordinarily decide issues not raised or decided by a trial court. *See Conyers v. State,* 354 Md. 132, 148, 729 A.2d 910, 918, *cert. denied,* 528 U.S. 910, 120 S.Ct. 258, 145 L.Ed.2d 216 (1999) (citing Md. Rule 8–131(a), holding that several issues in review of a death sentence were not preserved because they were not raised at the

trial level); *Walker v. State*, 338 Md. 253, 262–63, 658 A.2d 239, 243, *cert. denied*, 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995) (citing Md. Rule 8–131(a), holding that issues relating to denial of due process because of prosecutorial misconduct and a Sixth Amendment violation of being denied counsel during pre-trial proceedings were not properly raised below); *White v. State*, 324 Md. 626, 640, 598 A.2d 187, 194 (1991) (citing Md. Rule 8–131(a) in holding that a claim that the defendants were deprived of their constitutional right to present witnesses in their defense was not properly before the Court because the argument was not made to the trial court); *In re John H.*, 293 Md. 295, 303, 443 A.2d 594, 598 (1982) (citing Rule 885, a predecessor of Md. Rule 8–131(a), not reaching the issue of whether a statute was constitutional because the issue of constitutionality of the statute was not argued to the trial judge); *Hewitt v. State*, 242 Md. 111, 113–14, 218 A.2d 19, 20–21 (1966) (specifically holding that a double jeopardy issue may not be raised for the first time on appeal pursuant to then Rule 885); *Iozzi v. State*, 224 Md. 42, 46, 166 A.2d 257, 260 (1960) (not reaching a claim that the defendant was not allowed his right to counsel when his attorney was not present at a portion of the trial, citing Rule 885 and stating, "[i]n the absence of anything to show a request to the trial court or a ruling thereon, there is nothing before us to consider") (alteration added); *Kirby v. State*, 222 Md. 421, 425, 160 A.2d 786, 788 (1960) (stating that "cases almost uniformly hold that the right to a speedy trial . . . like other statutory or constitutional rights, may be waived and that it is waived by failing to assert the right in the trial court. Unless that question was raised below, it is not before the appellate court for review—that is, it may not be raised for the first time on appeal because, among other reasons, a defendant cannot participate in a trial and save an objection with which to challenge an adverse verdict"); *Martel v. State*, 221 Md. 294, 300–01, 157 A.2d 437, 441 (1960) (citing Rule 885, dismissing the issues of the defendant being deprived of a preliminary hearing and a speedy trial because the issues were not "raised below and they cannot now be considered by this Court");

*Howell v. State*, 56 Md.App. 675, 678, 468 A.2d 688, 689 (1983), *cert. denied*, 299 Md. 426, 474 A.2d 218 (1984), *cert. denied*, 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984) (holding, pursuant to Rule 885, that an appellate court is not required to reach a double jeopardy issue that was not brought in the trial court); *Medley v. State*, 52 Md.App. 225, 231, 448 A.2d 363, 365–66 (1982) (recognizing that even constitutional issues may be waived if not properly raised at the trial court level pursuant to Rules 885 and 1085, both predecessors to current Md. Rule 8–131(a)); *see also Johnson v. State*, 138 Md.App. 539, 550 n. 2, 772 A.2d 1260, 1266 n. 2 (2001) (recognizing, in dicta, the Court of Special Appeal's *Howell* holding that double jeopardy claims may not be raised for the first time on appeal).

Rule 8–131(a) states:

"**RULE 8–131. SCOPE OF REVIEW.**

(a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. *Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court*, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." [Emphasis added.]

Speaking for the Court of Special Appeals in *Medley, supra*, Judge Wilner examined the purpose of Rule 885, a predecessor to Md. Rule 8–131(a):

"It is a matter of basic fairness to the trial court and to opposing counsel, as well as being fundamental to the proper administration of justice; and one need only look at the extensive annotations to Maryland Rules 885 and 1085 to see that it is rigorously enforced. Even errors of Constitutional dimension may be waived by failure to interpose a timely objection at trial (*see, for example, Smith v. State*, 16 Md.App. 317[, 295 A.2d 802] (1972), *cert. den.* 267 Md. 744

(1973); *Hewitt v. State,* 242 Md. 111[, 218 A.2d 19] (1966)), and so may alleged violations of sub-constitutional procedural rules. *See Logan v. State,* 289 Md. 460, 487[, 425 A.2d 632] (1981)."

*Medley,* 52 Md.App. at 231, 448 A.2d at 366 (alterations added).

This rule and its predecessors have been applied to the failure of a defendant to raise constitutional rights in the trial court, including an issue regarding the right against double jeopardy. *See Hewitt, supra,* 242 Md. 111, 218 A.2d 19. In *Hewitt,* the defendant was first tried in a bench trial on a five count criminal information. Although the trial judge found him guilty on the third and fourth counts of the information, he made no reference to the remaining three counts, which, under Maryland law, is a finding of not guilty by implication on those three counts. The defendant's motion for a new trial was heard and granted by a new trial judge. During the bench retrial of the defendant, the judge found the defendant guilty under the first count and not guilty on the remaining four. The defendant first raised the double jeopardy issue, along with a due process argument, with regard to count one of the information on appeal. This Court, in short order, dismissed the issues, stating:

> "We have repeatedly held and attempted to make clear that Maryland Rule 885 has useful and sound objectives. One of its purposes is to prevent the trial of cases in a piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation. Since no questions concerning double jeopardy or denial of due process were raised below, we hold that these questions are not now properly before us. Maryland Rule 885; *Martel v. State,* 221 Md. 294, 157 A.2d 437."

*Id.* at 113–14, 218 A.2d at 20–21. *See also Howell, supra,* 56 Md.App. at 678, 468 A.2d at 689, *cert. denied,* 299 Md. 426, 474 A.2d 218 (1984), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984).

Waiver of other constitutional issues has been treated similarly by this Court. *See Walker,* 338 Md. at 262–63, 658 A.2d at 243, *cert. denied,* 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995) (Sixth Amendment violation of being denied counsel); *White,* 324 Md. at 640, 598 A.2d at 194 (constitutional right to present witnesses in their defense); *In re John H.,* 293 Md. at 303, 443 A.2d at 598 (issue of whether a statute was constitutional); *Iozzi,* 224 Md. at 46, 166 A.2d at 260 (right to counsel); *Kirby,* 222 Md. at 425, 160 A.2d at 788 (right to a speedy trial); *Martel,* 221 Md. at 300–01, 157 A.2d at 441 (speedy trial).

Regardless of this precedent, petitioner contends that this Court's decision in *Carbaugh v. State,* 294 Md. 323, 449 A.2d 1153 (1982), controls, and that it stands for the proposition that a waiver of the right against double jeopardy requires a knowing and intelligent waiver, thus allowing such an issue to be brought for the first time on appeal. In *Carbaugh,* Carbaugh was charged with speeding and driving with a revoked license. In that case, a patrol officer observed an automobile coming toward him after he had been advised that a vehicle matching that vehicle's description was speeding in his direction. The patrol officer believed the driver to be wearing a green shirt. When the officer flagged the car down, the car drove into a private driveway and all of the five occupants had exited the car by the time the officer reached the driveway. Carbaugh, who was wearing a green shirt, and the other occupants told the officer that a man named Michael Yonker, not Carbaugh, was the driver. After questioning Yonker and thinking that he must have been mistaken about the green shirt, the officer issued a ticket to Yonker. Soon after the men left the scene, another officer (who had been working airborne surveillance) told the arresting officer that the driver was wearing a green shirt and that the arresting officer issued the citation to the wrong person.

At trial, Carbaugh was found guilty of driving while his license was revoked and he was sentenced to a short jail term. On appeal to the Court of Special Appeals, Carbaugh first raised collateral estoppel, as embodied within the Double

Jeopardy Clause of the United States Constitution, as a defense. He claimed that Yonker had paid the citation, thus pleading guilty to the crime of speeding, prior to the completion of Carbaugh's trial and that resolved the issue of who had been driving the car—Yonker was the driver, not Carbaugh. The Court of Special Appeals, in not reaching the merits of the double jeopardy claim, relied primarily on the reasoning that the claim was barred because of Rule 736,[2] which required certain motions to be made pre-trial, or else be waived.

This Court reversed the intermediate appellate court stating:

"First, we reject the holding of the Court of Special Appeals that the defendant's double jeopardy contention was waived by his failure to file a pre-trial motion under Rule 736.

"With regard to double jeopardy claims designed to prevent or invalidate trials, this Court has repeatedly taken the position that the waiver concept of *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938), is applicable, and that an effective waiver requires knowing and intelligent action by the defendant himself.[3] *See, e.g., Davis v. State*, 285 Md. 19, 33, 400 A.2d 406 (1979); *Curtis v. State*, 284 Md. 132, 144, 395 A.2d 464 (1978); *Jourdan v. State*, 275 Md. 495, 507, 341 A.2d 388 (1975). This is the position taken by the Supreme Court in *Green v. United States*, 355 U.S. 184, 191–192, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).[4]

"There has been no contention in this case that the defendant knowingly and intelligently waived his double jeopardy claim; moreover, the record would not support any such contention if it were made. Consequently, the defendant's failure to file a motion under Rule 736 did not constitute a waiver of the claim.

---

**2.** What was then Rule 736 is currently encompassed in Md. Rule 4–252(a), which outlines certain mandatory pre-trial motions to be made in Circuit Court proceedings.

"We assume for purposes of this case that Rule 736 a. 1., providing that a motion asserting a 'defect in the institution of the prosecution' should be made before trial, does encompass some types of motions asserting double jeopardy claims.[5]  *See Pulley v. State,* 287 Md. 406, 408, 412 A.2d 1244 (1980) (similarly 'assuming' that Rule 736 applied to motions to dismiss on double jeopardy grounds).  Furthermore, as indicated in *Pulley,* 287 Md. at 415, 412 A.2d 1244, raising the double jeopardy issue prior to trial is necessary if the defendant desires to exercise his right of an immediate appeal from an order overruling his double jeopardy defense.  Otherwise, the right of immediate appeal is waived, and the defendant must await a final judgment in the criminal case before an appeal may be taken and the double jeopardy issue raised.  Nevertheless, at least absent a knowing and intelligent relinquishment of the claim, the double jeopardy claim may be raised on an appeal from the final judgment regardless of whether a pre-trial motion had been made."

*Carbaugh,* 294 Md. at 327–28, 449 A.2d at 1155–56 (footnotes omitted).  But, in footnotes 3 and 5, which are located within the above excerpt from *Carbaugh,* the Court recognized that some claims under double jeopardy prohibitions may be waived.  In footnote 3, the Court stated that "Some multiple punishment aspects of the double jeopardy prohibition may present different considerations.  Thus ... a challenge to concurrent sentences on a greater offense and on a lesser included offense must be properly raised or it is deemed waived, regardless of the 'knowing and intelligent' standard."  *Id.* at 327 n. 3, 449 A.2d at 1155 n. 3.  In a later footnote, the Court added the following after assuming that Rule 736 did encompass certain types of double jeopardy motions:

"Whether the rule would encompass the double jeopardy claim in the instant case, however, is doubtful.  The record indicates that when the instant prosecution was instituted, Yonker had not paid the fine on the citation issued to him. It was paid after the present case was instituted but before trial.  Therefore, even if the defendant's double jeopardy

claim had merit, there would have been no 'defect in the *institution* of the prosecution' within the literal language of the rule."

*Id.* at 328 n. 5, 449 A.2d at 1156 n. 5. The specific holding in *Carbaugh* is distinguishable for several reasons. First, *Carbaugh* dealt with a collateral estoppel issue, not a mistrial and subsequent failure to raise the double jeopardy issue before the retrial. The contexts are dissimilar. In the case *sub judice* petitioner was aware of the mistrial and should have raised the issue at the retrial, unlike the defendant in *Carbaugh*, who may or may not have known that his companion had paid the speeding ticket, thus pleading guilty to driving the same car, at the very same time that Carbaugh was being charged with driving.

Additionally, the *Carbaugh* Court never reached the issue of whether the double jeopardy claim was properly before the Court in light of Rule 1085, a companion rule to Rule 885,[3] both being predecessors to current Md. Rule 8–131(a). This Court's opinion dealt solely with the application of Rule 736 to the factual situation, the reasoning on which the intermediate court primarily relied. The Court of Special Appeals, however, specifically noted in the last sentence of that court's decision, that "the question was not presented in any manner to the trial judge and therefore is not before us under Md. Rule 1085." *Carbaugh v. State*, 49 Md.App. 706, 711, 435 A.2d 116, 118 (1981). The applicability of Md. Rule 1085 apparently never was discussed by the Court of Appeals. The Court of Appeals ultimately dismissed Carbaugh's claim solely because the Court held that the doctrine of collateral estoppel was not applicable to the situation.

The Court of Special Appeals expanded on the *Carbaugh* Court's failure to reach the Rule 1085 issue in *Howell v. State*,

---

**3.** These two former rules, 885 and 1085, were nearly identical to the current version of Md. Rule 8–131(a) and to each other. The only relevant difference between the two former rules is that Rule 885 applied to the scope of review of the Court of Appeals, while Rule 1085 applied to the scope of review of the Court of Special Appeals.

*supra,* an opinion authored by Judge Moylan. The intermediate appellate court strongly disagreed with a broad reading of *Carbaugh,* stating:

"We decline to consider the double jeopardy claim. The appellant failed utterly to raise this issue at the trial now under review and nothing is, therefore, preserved for appellate review. Md. Rule 1085. The succor he seeks in *Carbaugh v. State,* 294 Md. 323, 449 A.2d 1153 (1982), is simply not to be found there. That case established that the requirement of Md. Rule 736 a 1 that certain motions be raised pretrial lest they be deemed waived would not apply to all double jeopardy-related claims.

. . .

". . . The Court of Appeals did not deal even remotely with the admittedly casual, albeit arguably alternative, holding of this Court that the failure to raise the double jeopardy issue at trial would preclude appellate review, even if the failure to raise it pretrial did not. . . . A careful reading of the two opinions in conjunction, therefore, yields the more narrow construction that the only thing considered by the Court of Appeals and the only thing held by the Court of Appeals was that the failure to raise certain double jeopardy issues by way of pretrial motion under Md. Rule 736 would not *ipso facto* bar appellate review. . . ."

*Howell,* 56 Md.App. at 678–79, 468 A.2d 689–90.

We agree. In our *Carbaugh* decision we did not consider Rules 1085 or 885.[4] This Court had, however, previously reached, and decided, the exact issue in *Hewitt v. State, supra,* expressly citing Rule 885 in not reaching a question of double jeopardy where that issue was not raised in the trial court during a retrial. As we have previously mentioned, in *Hewitt,* Chief Judge Prescott specifically stated:

"We have repeatedly held and attempted to make clear that Maryland Rule 885 has useful and sound objectives.

---

4. As previously mentioned, the current incarnation of Rules 1085 and 885 are currently encompassed in Md. Rule 8–131(a).

One of its purposes is to prevent the trial of cases in a piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation. *Since no questions concerning double jeopardy or denial of due process were raised below, we hold that these questions are not now properly before us.* Maryland Rule 885; *Martel v. State,* 221 Md. 294, 157 A.2d 437."

*Hewitt,* 242 Md. at 113–14, 218 A.2d at 20–21 (emphasis added).

Similarly, there is little support for Petitioner's position in the United States Supreme Court decisions discussing a defendant's waiver of his double jeopardy protections. In *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the Supreme Court first applied its "knowing and intelligent" waiver test to the issue of double jeopardy protections. The substantive and procedural facts of that case are distinguishable from those in this case. In *Green,* Green was tried for arson and first degree murder. The trial judge incorrectly instructed the jury that they could find Green guilty of arson for the first count and, if so, either first degree or second degree murder under the latter count. A jury convicted Green of arson and second degree murder and was silent to the first degree murder charge. Green appealed and his conviction for second degree murder was reversed and remanded. On remand, Green was tried a second time for first degree murder *and he raised the defense of double jeopardy at the outset of the trial.* The motion was denied, he was retried and found guilty of first degree murder.

The Supreme Court reversed the conviction stating that Green did not waive his double jeopardy rights as to the first degree murder charge by appealing his second degree murder conviction. The Court said:

"At Green's first trial the jury was authorized to find him guilty of either first degree murder (killing while perpetrating a felony) or, alternatively, of second degree murder (killing with malice aforethought). The jury found him guilty of second degree murder, but on his appeal that

conviction was reversed and the case remanded for a new trial. At this new trial Green was tried again, not for second degree murder, but for first degree murder, even though the original jury had refused to find him guilty on that charge and it was in no way involved in his appeal. For the reasons stated hereafter, we conclude that this second trial for first degree murder placed Green in jeopardy twice for the same offense in violation of the Constitution.

. . .

"After the original trial, but prior to his appeal, it is indisputable that Green could not have been tried again for first degree murder for the death resulting from the fire. A plea of former jeopardy would have absolutely barred a new prosecution even though it might have been convincingly demonstrated that the jury erred in failing to convict him of that offense. And even after appealing the conviction of second degree murder he still could not have been tried a second time for first degree murder had his appeal been unsuccessful.

"Nevertheless the Government contends that Green 'waived' his constitutional defense of former jeopardy to a second prosecution on the first degree murder charge by making a *successful* appeal of his improper conviction of second degree murder. We cannot accept this paradoxical contention. 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right. *Cf. Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. When a man has been convicted of second degree murder and given a long term of imprisonment it is wholly fictional to say that he 'chooses' to forego his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense. In short, he has no meaningful choice."

*Id.* at 189–92, 78 S.Ct. at 225–26, 2 L.Ed.2d 199 (footnotes omitted). In *Green,* the defendant actually raised a defense

based on former jeopardy at the retrial for a crime for which he had already been acquitted. Here, petitioner failed to even raise the double jeopardy issue at retrial after a mistrial granted for manifest necessity. Such an omission, one not made in *Green*, leaves this Court with no trial court ruling to review regarding double jeopardy.

The Supreme Court case of *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), is also distinguishable. There, the defendant, Menna, after being granted immunity for his testimony, was charged with contempt of court for refusing to answer questions in a grand jury proceeding investigating a murder and for failing to obey a court order. He was sentenced to a 30–day jail term. Thereafter, the defendant was criminally indicted for his refusal to answer the same questions for which he was found in contempt. *Menna then moved to have his indictment dismissed because it was in violation of his double jeopardy rights.* After his motion was denied, he pleaded guilty to the indictment and was sentenced. On appeal, the New York Court of Appeals declined to address Menna's double jeopardy claim because his guilty plea 'waived' his right to claim the defense.

The Supreme Court overruled the New York court because it found that Menna's plea waived his right to contest factual guilt, but not his right to raise the constitutional defense of double jeopardy and remanded the case to be heard on the merits. Menna, unlike petitioner in the case *sub judice*, however, had specifically raised the double jeopardy issue in the trial court. There was no question that his argument had been preserved. In addition, in a footnote, the Supreme Court noted:

> "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."

*Id.* at 62 n. 2, 96 S.Ct. at 242 n. 2, 46 L.Ed.2d 195. A reading of our cases makes clear that double jeopardy rights may be waived by failure to raise them in the trial court, and the

holdings of these Supreme Court cases are not in conflict with our cases. Both of those Supreme Court cases involved defendants that specifically raised the defenses of double jeopardy in the trial court, which were ruled upon by that court. Here the issue was not raised below.

In fact, in *Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 2669, 115 L.Ed.2d 808 (1991), the Supreme Court implicitly has recognized that a defendant may waive a double jeopardy claim by failing to raise an objection at trial. Although *Peretz* determined that "a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence," the Supreme Court, in a string citation following its proposition that "[t]he most basic rights of criminal defendants are similarly subject to waiver," cited with approval the Eleventh Circuit case *United States v. Bascaro* for the proposition that the "absence of [an] objection is [a] waiver of [a] double jeopardy defense." *Id.* (alterations added). In *Bascaro*, the Eleventh Circuit case stated:

"The only issue raised by Bascaro that merits discussion and that was not considered previously as a common issue, is his double jeopardy claim. The government appears to acknowledge that Bascaro was previously tried and convicted of conspiracy to possess marijuana with intent to distribute in connection with a smuggling venture undertaken by the enterprise/conspiracy being prosecuted in the instant case. If true, this state of affairs would raise a question as to the validity of Bascaro's subsequent continuing criminal enterprise conviction and possibly his RICO conspiracy conviction in this case. *We do not, however, reach the merits of Bascaro's double jeopardy claim. The issue is raised for the first time on appeal; Bascaro's double jeopardy defense was thus waived by his failure to assert it at trial.*"

*United States v. Bascaro*, 742 F.2d 1335, 1364–65 (11th Cir. 1984), *cert. denied sub nom., Hobson v. United States*, 472 U.S. 1017, 105 S.Ct. 3476–77, 87 L.Ed.2d 613 (1985) (emphasis added) (citations omitted) (footnote omitted).

The State argues and we recognize that, under the particular facts in the case *sub judice,* acquiescing to a mistrial may have been a strategic move by counsel. As petitioner's counsel noted on September 11, 2001, he was unsure of how the jurors would react to his client's case and whether they could focus on the evidence after the national tragedy, when the trial might be resumed. By agreeing to a mistrial, petitioner could alleviate these concerns during voir dire at retrial instead of facing the uncertainty of the jury located within the same region of the country of one of the major terrorist attacks.

If petitioner was bound by counsel's acquiescence to the mistrial, then this Court has stated:

> " 'It would, in our judgment, be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation. In this respect, the situation is analogous to the well-established principle that a criminal defendant who seeks or expressly consents to a mistrial, even though the required "manifest necessity" standard for the mistrial may have been absent, cannot take advantage of his own act and prevent a retrial on double jeopardy grounds.' "

*Dorsey v. State,* 349 Md. 688, 703, 709 A.2d 1244, 1251 (1998) (quoting *State v. Hicks,* 285 Md. 310, 403 A.2d 356, *on motion for reconsideration,* 285 Md. at 334, 335, 403 A.2d at 368, 369 (1979)). We do not, however, decide this specific question in that the double jeopardy issue has not been properly preserved.

Moreover, although his attorney acquiesced to the trial judge's declaration of the mistrial, petitioner, at least facially, opposed any delay—even a continuance. As the transcript of September 11, 2001, illustrates, petitioner clearly wanted no delay in the trial. After mentioning a mental condition and the 14-month time period of the case to that point, petitioner stated that his major concern regarding a mistrial was that, "all a mistrial can do is give the prosecution more time, and 10 years, 15 years from now she can bring the same case back up, and all this time that will be held over my head." The judge

assured petitioner that the case would be reset within six months (in fact, the retrial commenced within two months). Petitioner expressed that this would violate his rights and that he did not understand why the closing of the court was out of the control of the trial judge. Petitioner expressed that he wanted to continue the trial despite the building's closing, because he knew "what the prosecution's going to do."

Prior to this exchange, petitioner's counsel, however, in response to the trial judge asking whether he agreed with the court declaring a mistrial, stated, "Your Honor ... that's correct." Counsel then went on to describe the reasons why he thought it best to grant a mistrial, including stating his concerns that the jurors in that earlier case would not be able to concentrate on the case in light of national events. Counsel even stated, "I've explained to [petitioner] all of those issues, and how it is that we arrived at this point.... [I]n view of all of that [petitioner] understands, but he would like to address the Court very briefly" (alterations added). Petitioner then participated in the exchange with the trial judge that we have earlier discussed.

### III. Conclusion

No arguments of potential double jeopardy were made to the first trial court prior to the granting of the mistrial. After the mistrial was granted neither petitioner nor his counsel ever raised the double jeopardy issue to the second trial court and it was never presented until it was raised as an appellate afterthought. This Court has stated that:

> "one of the main reasons why such a defense is made immediately appealable results because 'the guarantee against double jeopardy assures an individual that, among other things, he will not be forced ... to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense.' "

*Pulley v. State,* 287 Md. 406, 418, 412 A.2d 1244, 1251 (1980) (quoting *Abney v. United States,* 431 U.S. 651, 661, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977)). Instead of raising the issue prior to or during the retrial, petitioner waited until *after*

an unfavorable judgment had been made and a sentence rendered, and then only raised it during the appellate process. Petitioner thus availed himself of the benefits of his counsel's trial tactic of agreeing to the mistrial by selecting a new jury, *i.e.*, he relieved himself of his counsel's concern that the September 11, 2001 jury would not be able to concentrate on his case due to the national tragedy, and, when a negative result was procured, only then did he raise the issue of double jeopardy.

Petitioner filed several motions, but never filed a motion to dismiss on double jeopardy grounds. Petitioner did not raise the issue prior to the mistrial or during the retrial. Because no trial judge ruled on the double jeopardy issue, Md. Rule 8–131(a) provides that the issue is not properly before this Court.

We hold that the issue was not preserved for appellate review. While we affirm the judgment of the Court of Special Appeals, we do so for the reasons stated herein.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**