947 A.2d 74

**Anton Sherrod INGRAM**

v.

**STATE of Maryland.**

**No. 2895, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

May 2, 2008.

486

Anton Ingram, Pro se.

Carrie J. Williams (Douglas F. Gansler, Atty. General on the brief), Baltimore, for Appellee.

Panel: SALMON, DEBORAH S. EYLER, MEREDITH, JJ.

MEREDITH, Judge.

Anton Sherrod Ingram appeals from the denial of a motion he filed pursuant to Maryland Rule 4–345(a), which is the rule that provides: "The court may correct an illegal sentence at any time." Ingram asserted in his motion that his sentence is illegal because he had previously been tried and convicted of a lesser included offense arising out of the same course of conduct which gave rise to his current sentence. As a consequence of the prior prosecution, Ingram contends that the sentence he is currently serving is based upon a conviction that should have been barred by the legal protections against double jeopardy.

█ Based upon the limited record before us, it appears that Ingram's contention that his second trial may have been barred by the law's constitutional and common law protection against double jeopardy is supported by the decision of the Court of Appeals in *Anderson v. State*, 385 Md. 123, 867 A.2d 1040 (2005). Notwithstanding this conclusion, we will affirm the denial of his motion to correct his sentence. We hold that an argument that challenges the merits of a conviction is not properly raised by way of a motion to correct an illegal sentence. We leave open the possibility that Ingram may have a right to challenge the merits of his conviction pursuant to the Maryland Uniform Postconviction Procedure Act, codified in Maryland Code (2001), Criminal Procedure Article ("Crim.Pro."), Title 7.

Our conclusion that a motion to correct an illegal sentence is not the proper vehicle for raising an argument attacking the underlying conviction is supported by recent cases in which the Court of Appeals has emphasized that Rule 4–345(a) is not

a substitute for an appeal. *Chaney v. State,* 397 Md. 460, 466–
67, 918 A.2d 506 (2007); *Pollard v. State,* 394 Md. 40, 47, 904
A.2d 500 (2006); *State v. Wilkins,* 393 Md. 269, 273, 900 A.2d
765 (2006). In *Pollard, supra,* 394 Md. at 47, 904 A.2d 500,
Judge Clayton Greene wrote: "A motion to correct an illegal
sentence . . . may not be used as an alternative method of
obtaining belated appellate review of the proceedings that led
to the imposition of judgment and sentence in a criminal case."
*Accord Wilkins, supra,* 393 Md. at 273, 900 A.2d 765. Be-
cause the claim Ingram makes arises out of his prosecution,
rather than the sentence itself, the issue is not properly raised
by way of a motion to correct an illegal sentence.

## Background

■ Ingram was prosecuted twice in Baltimore County for
charges arising out of his conduct on June 11, 2003. On
January 14, 2004, Ingram was found guilty and sentenced for
having possessed cocaine on June 11, 2003. Then, on June 1,
2004, Ingram was found guilty of having distributed cocaine on
June 11, 2003. It is the sentence he received for this second
conviction that Ingram claims is illegal. Ingram has not
provided us with any transcripts of proceedings, but we glean
the following facts from documents in the record.[1]

---

1. The State moved for us to dismiss the appeal because of Ingram's
failure to provide the transcripts required by Maryland Rules 8–411 and
8–413(a). Although it is within our discretion to dismiss an appeal for
failure to comply with Rule 8–413—*see* Maryland Rule 8–602(a)(6)—we
decline to dismiss based upon the lack of transcripts so that we may
explain that Ingram's motion to correct an illegal sentence was not a
permissible option for asserting a challenge to his underlying convic-
tion.

 The lack of circuit court transcripts, however, leaves open the possi-
bility that Ingram may have knowingly and intelligently waived or
bargained away his double jeopardy rights at either of the trial proceed-
ings. *Cf. United States v. Broce,* 488 U.S. 563, 565, 109 S.Ct. 757, 102
L.Ed.2d 927 (1989) (double jeopardy challenge foreclosed by guilty
plea); *Pulley v. State,* 43 Md.App. 89, 96 –97, 403 A.2d 1272 (1979)
(claim of double jeopardy forfeited by failure to file timely motion
pursuant to former Rule 736 a), *affirmed on other grounds,* 287 Md. 406,
412 A.2d 1244 (1980). *See also Broce, supra,* 488 U.S. at 587, 109 S.Ct.
757 (Blackmun, J., dissenting) ("Statements made at the plea hearing

In a memorandum filed in support of his motion to correct, Ingram summarizes the facts that led to his prosecutions as follows:

> In the instant case, Petitioner [*i.e.,* Ingram] sold an undercover detective one baggie of cocaine from a "stash" in his boxer shorts. As in *Anderson,* the part of the [police officers'] plan for identification of Petitioner went awry when, before he could be approached and questioned, he got into a vehicle belonging to a relative to leave the area. However, a prior check of the MVA records on the vehicle, while waiting to move in to identify Petitioner, revealed a legitimate ground for a stop, to wit: suspended registration. Officer Sean Salisbury[,] the "identifier" for the undercover team, stopped and ultimately arrested Petitioner for falsely identifying himself and driving on a suspended license and registration. During a search, while being processed, the remainder of Petitioner's package of cocaine was discovered [concealed in the hem of his boxer shorts]. . . . Petitioner was charged with possession with intent to distribute, as well as possession. Thus, the case became a Circuit Court matter, calling for the State's Attorney's attention. . . .

In the circuit court's memorandum opinion denying Ingram's motion to correct the allegedly illegal sentence, the court summarized its analysis of the pertinent facts as follows:

> The Petitioner[, Ingram,] argues that he was subjected to double-jeopardy, in violation of his Constitutional rights, by having been convicted of and sentenced for the crimes of Possession of Cocaine, and Distribution of Cocaine. He argues further that if he was subjected to double-jeopardy, then any sentence given for such a conviction would be an illegal sentence.

---

or other pretrial proceeding may be sufficient to clarify any ambiguity, or may constitute an express waiver of any double jeopardy challenge."). Transcripts of the trial court proceedings would conclusively resolve any such uncertainties about the circumstances that led to Ingram's two convictions arising from the events of June 11, 2003.

Having reviewed the case file and the petition, this Court is not satisfied that the Petitioner was ever subjected to double-jeopardy and was, therefore, never given an illegal sentence. The crimes of Possession of Cocaine and Distribution of Cocaine are separate and distinct. While it is true that the two charges for which the Petitioner was convicted ... stem from the same evening, the incidents are different. The Petitioner concedes that he sold an undercover police officer a bag of cocaine that he had on his person. This is certainly the distribution of cocaine. But before the Petitioner was identified at the scene and arrested, he got into his car [and] left. He was pulled over and arrested on the unrelated offense of driving on a suspended license. Only then was cocaine discovered in the Petitioner's car, thus satisfying the elements of possession [of] cocaine. While all occurring in the same evening, these charges stem from two separate incidents. It is true that in order to distribute cocaine, one must, at some point, possess cocaine, making possession of cocaine a lesser-included offense of distribution of cocaine. The distinction here is that the possession of cocaine the Petitioner was tried and convicted of was in the cocaine found in his car subsequent to the traffic stop, not the possession for cocaine as it was being handed to the undercover officer in the distribution charge. Thus, the Petitioner was convicted of two separate crime[s] and received appropriate sentences for each.

We are unable to ascertain the basis for the motion court's statements that a separate quantity of cocaine was "discovered in the Petitioner's car," and that the initial conviction was for "the cocaine found in [Ingram's] car subsequent to the traffic stop." The statement of probable cause prepared by the arresting officer makes no reference to any cocaine being found in Ingram's vehicle. To the contrary, the statement of probable cause corroborates Ingram's contention that his only stash on June 11, 2003, was concealed in the hem of his boxer shorts.

■ As the Court of Appeals explained in *Anderson*, 385 Md. at 140–41, 867 A.2d 1040, the question of whether offenses are separate for double jeopardy purposes is generally determined by reviewing the charging documents rather than the actual trial evidence. The Court there explained, *id.*:

> One may never know, unless a transcript is prepared, what evidence was presented, and one could never be certain in any event what evidence a trier of fact (or the court on motion) credited in reaching its verdict. The Supreme Court, for Constitutional purposes, and we, as a matter of common law, have rejected an "actual evidence" test to determine sameness in law, and we see no profit, absent special circumstances not present here, in adopting that test to determine sameness in fact. In most cases, the only sensible and workable criterion for determining the nature and scope of the prior offense is the effective charging document. That states the offense for which the defendant was tried.

Following Ingram's arrest on June 11, 2003, he was initially charged, by way of a District Court Statement of Charges, with driving a vehicle with suspended registration, as well as possession of cocaine, and possession of cocaine with intent to distribute. On July 7, 2003, Ingram was indicted in the Circuit Court for Baltimore County. Indictment No. 03CR2487 charged Ingram with the following five counts based upon conduct on June 11, 2003:

### COUNT ONE

The Jurors of the State of Maryland, for the body of Baltimore County, do on their oath present that **ANTON S. INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did possess a controlled dangerous substance of Schedule II of the Criminal Law Article Sec. 5–602 of the Annotated Code of Maryland, which is a narcotic drug, in sufficient quantity reasonably to indicate under all circumstances an intent to

distribute a controlled dangerous substance, to wit: **CO-CAINE;** contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

(CDS POSS W/INT TO DIST–CR 5–602)

## COUNT TWO

The Jurors of the State of Maryland, for the body of Baltimore County, do on their oath present that **ANTON S. INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did possess a controlled dangerous substance of Schedule II, to wit: **CO-CAINE;** contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

(POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE–CR 5–601)

## COUNT THREE

The Jurors of the State of Maryland, for the body of Baltimore County, do on their oath present that **ANTON S. INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully and knowingly did make a false statement to OFF. SALISBURY # 3819, knowing the same to be false, with the intent to deceive and with the intent to cause an investigation or other action to be taken; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

(FALSE STATEMENT–CR 9–501)

## COUNT FOUR

The Jurors of the State of Maryland, for the body o f Baltimore County, do on their oath present that **ANTON S.**

**INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did drive a motor vehicle with a suspended registration on a highway in this State of Maryland; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

(DRIVING VEHICLE WITH SUSPENDED REGISTRA-TION—Transportation Article § 13–401(h))

CITATION NO: 0BY97536

### COUNT FIVE

The Jurors of the State of Maryland, for the body of Baltimore County, do on their oath present that **ANTON S. INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did drive a motor vehicle on any highway or on any property specified in Section 21–101.1 of the Transportation Article while his license or privilege to drive was suspended.

(LICENSES SUSPENDED UNDER CERTAIN PROVISIONS—Transportation Article, Sec. 16–303(h))

CITATION NO: 0BY97537

As previously mentioned, Ingram did not provide us with a transcript of any circuit court proceedings, but the docket entries from the Circuit Court for Baltimore County reflect that on January 14, 2004, Ingram waived a jury trial and pled not guilty to Count 2 (simple possession of cocaine on June 11, 2003). The prosecutor nolle prossed the other four counts of the indictment, and the court tried the case upon an agreed statement of facts. The court found Ingram guilty of possession, and sentenced him to one year in prison. The court gave Ingram credit for the 217 days he had been incarcerated since his arrest.

Within a month after the first conviction, on February 2, 2004, Ingram was indicted a second time for conduct that

occurred on June 11, 2003. Indictment No. 04CR0337 charged Ingram with the following three counts:

## COUNT ONE

The Jurors of the State of Maryland, for the body of Baltimore County, do on their oath present that **ANTON SHERROD INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did distribute a controlled dangerous substance of Schedule II, to wit: **COCAINE;** contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

(CDS MANUF/DIST–OTHER–CR 5–602(1))

## COUNT TWO

The Jurors of the State of Maryland, for the body of Baltimore County, do on their oath present that **ANTON SHERROD INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did possess a controlled dangerous substance of Schedule II, to wit: **COCAINE;** contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

(POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE–CR 5–601)

## COUNT THREE

The Jurors of the State of Maryland, for the body o f Baltimore County, do on their oath present that **ANTON SHERROD INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did drive a motor vehicle with a suspended registration on a highway in this State of Maryland; contrary to the form of

the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State. (DRIVING VEHICLE WITH SUSPENDED REGISTRA-TION—Transportation Article § 13–401(h))
CITATION NO: 0BY97536

The circuit court's file pertaining to the second indictment includes an omnibus pretrial motion filed by Ingram's attorney pursuant to Maryland Rule 4–252, asserting, among other things, that "this prosecution is barred because of ... double jeopardy." The docket indicates that the defendant's motion to dismiss the indictment was denied on June 1, 2004, the day of trial.

We discern from the docket entries that on June 1, 2004, Ingram waived a jury trial and pled not guilty to Count One (distribution of cocaine on June 11, 2003). The prosecutor nolle prossed Counts Two and Three, and the court tried the case upon an agreed statement of facts. The court convicted Ingram of distribution of cocaine, and, on August 24, 2004, the court sentenced Ingram to twenty years, the first ten of which are to be served without parole.

## Motion to Correct An Illegal Sentence

After being sentenced on August 24, 2004, Ingram did not file any appeal. Nor did he pursue any other postconviction relief until February 9, 2007, when he filed the motion to correct an illegal sentence. In his motion and supporting memorandum, Ingram argued that his second prosecution was barred by the double jeopardy principles set forth in the Court of Appeals' opinion in *Anderson, supra,* 385 Md. 123, 867 A.2d 1040, which was filed on February 9, 2005, *i.e.,* approximately six months after Ingram was sentenced.

The underlying facts of the *Anderson* case are indeed similar to the facts presented by Ingram. They are set forth as follows by Judge Alan Wilner, writing for the Court of Appeals:

Anderson was the target of a sting operation conducted by Detectives Clasing, Barnes, and Butler. The operational

*scenario,* as described by Detective Clasing, was to send one or more undercover detectives to purchase drugs from the target, to wait until those detectives, after purchasing the drugs, left the area, and then to have another detective accost the target in order to ascertain his identity. So as not to compromise the continued effectiveness of the undercover officers, charges against the target are normally delayed for a time.

In furtherance of that scheme, at 1:55 p.m. on October 1, 2002, Detective Barnes approached Anderson in the 1500 block of Myrtle Avenue and purchased two capsules of heroin from him for $20. Anderson removed the capsules from a cigarette pack he was holding. With the purchase complete, Barnes left the area. Five minutes later, Detective Butler approached Anderson, in the same place, and he, too, purchased two capsules containing heroin for $20 and then left the area. Those capsules also were removed from the cigarette pack. After making their respective purchases, Barnes and Butler called Detective Clasing and gave him a description of Anderson.

At about 2:30 p.m., Detective Clasing approached Anderson in order to conduct what he referred to as a "field interview." After directing Anderson to sit down on the curb, Clasing saw him throw a red object under a parked car. Clasing retrieved the object and found it to be a cigarette pack containing 25 capsules of suspected heroin. Clasing arrested Anderson and, the next day—October 2, 2002—filed a Statement of Charges against him in the District Court. The Statement of Charges accused Anderson of one count of possession of heroin on October 1, 2002, at 1500 Myrtle Avenue. Eight days later, October 10, Anderson appeared in District Court and, either on a plea of guilty or a plea of not guilty with an agreed statement of facts—which of the two is not entirely clear—he was found guilty and sentenced to a term of nine months in the Baltimore City Jail, which he began serving immediately.

On November 4, 2002, nearly four weeks after the District Court proceeding, the State obtained an indictment based

on the sale to Detective Butler. The indictment charged Anderson with possession with intent to distribute heroin and with distribution of heroin to Butler. The date and place of those offenses were alleged to be October 1, 2002, at 1500 Myrtle Avenue. On November 12, the State obtained a second indictment, based on the sale to Detective Barnes. That indictment charged Anderson with possession of heroin, possession with intent to distribute heroin, and distribution of heroin to Detective Barnes. The date and place of those offenses were alleged to be October 1, 2002, at 1500 Myrtle Avenue.

Anderson moved to dismiss the two indictments on the ground of double jeopardy. He averred that the offenses charged in the indictments and that charged in the District Court case all arose at about the same time and place and involved the same cigarette pack, and he argued that his conviction in the District Court barred further prosecution. The court indicated that the argument may have had merit under the holding in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), but observed that the Supreme Court had later overruled that decision. *See United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The applicable test for double jeopardy purposes, the court found, remained that enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). To constitute double jeopardy under that test, the court declared, the multiple offenses must arise from incidents that occur at the same time and place, but it found that the charges embodied in the two indictments arose from incidents that occurred at a different time than the incident underlying the District Court charge. For that reason, the motion was denied.

385 Md. at 125–28, 867 A.2d 1040 (footnote omitted).

Unlike Ingram, Anderson filed an immediate interlocutory appeal of the denial of his motion to dismiss based on double jeopardy grounds. *See Bunting v. State,* 312 Md. 472, 477–78, 540 A.2d 805 (1988) ("This Court has ... recognized that, under the collateral order doctrine, a defendant may take an

immediate appeal from the denial of a motion to dismiss on the ground of double jeopardy."). Relying on *Hawkins v. State*, 77 Md.App. 338, 550 A.2d 416 (1988), this Court affirmed the denial of Anderson's motion to dismiss, concluding that the distribution offenses had been already completed by the time Anderson was arrested and found to be in possession of the drugs remaining in the cigarette pack. The Court of Appeals, however, after analyzing the charging documents, concluded that Anderson's first conviction was for a charge that, because of the broad wording of the charging document, could have included the possession necessary for the distribution earlier in the day. Consequently, the Court of Appeals ruled that the second prosecution was barred on double jeopardy grounds.

■ The Court of Appeals explained in *Anderson, supra,* 385 Md. at 130–31, 867 A.2d 1040, that the double jeopardy prohibitions of the United States Constitution and the Maryland common law protect against two separate actions: (a) successive prosecutions for the same offense, and (b) multiple punishments for the same offense:

Both the Federal Constitution, through the Fifth and Fourteenth Amendments, and Maryland common law prohibit the State from placing a person twice in jeopardy for the same offense. That prohibition provides a dual protection—against prosecuting a person for an offense after that person has already been prosecuted for, and either convicted or acquitted of, the "same offense," and against imposing multiple punishments for the "same offense." *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Purnell v. State,* 375 Md. 678, 827 A.2d 68 (2003). With respect to both protections, the issue most often raised is whether the second prosecution or additional punishment is, in fact, for the "same offense."

■ To answer the question of whether the subsequent prosecution or multiple punishment is for the same offense requires consideration of whether the charges are the same

either in fact or in law. The Court explained in *Anderson,*
*supra,* 385 Md. at 131, 867 A.2d 1040:

> Depending on the context, the issue can turn on whether (1)
> the two or more offenses charged, in fact, arise from the
> same incident or course of conduct and thus are the same in
> fact, or (2) if so, despite a facial distinction between the
> offenses, as defined in the statutes or by the common law,
> the relationship between them is such that they are the
> same in law for double jeopardy purposes. *See Jones v.*
> *State,* 357 Md. 141, 158, 742 A.2d 493, 502 (1999). Both
> questions—sameness in fact and sameness in law—are rele-
> vant here.

■ The question of sameness in law is analyzed using the
"required evidence" test set forth in *Blockburger v. United*
*States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The
Court of Appeals described the *Blockburger* test in *Thomas v.*
*State,* 277 Md. 257, 267, 353 A.2d 240 (1976): "[W]here only
one offense requires proof of an additional fact, so that all of
the elements of one offense are present in the other, the
offenses are deemed to be the same for double jeopardy
purposes." Applying this analysis to the offenses of posses-
sion of a controlled dangerous substance and distribution of a
controlled dangerous substance, the *Anderson* Court noted
that every element of the crime of possession is also an
element of the crime of distribution. As a consequence, "the
two offenses 'are deemed the same offense for double jeopardy
purposes.'" 385 Md. at 132, 867 A.2d 1040 (quoting *State v.*
*Woodson,* 338 Md. 322, 329, 658 A.2d 272 (1995)). *See Brown*
*v. Ohio,* 432 U.S. 161, 168, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)
(The sequence of prosecution "is immaterial." "The greater
offense is . . . by definition the 'same' for purposes of double
jeopardy as any lesser offense included in it."); *Middleton v.*
*State,* 318 Md. 749, 758, 569 A.2d 1276 (1990) (because first
degree rape requires proof of only one additional fact beyond
the elements of second degree rape, "the two offenses were
the same for double jeopardy purposes," and defendant could
not be sentenced for both offenses).

Having concluded that a charge of possession is generally a lesser included offense of the distribution charges as a matter of law, the *Anderson* Court turned its analysis to "whether the possession offense" for which Anderson was first convicted "arose as part of the same course of conduct" for which he was subsequently prosecuted under the distribution charges—*i.e.,* whether the offenses were "the same in fact." *Anderson, supra,* 385 Md. at 133, 867 A.2d 1040. At the outset, the Court noted that, "absent a clear statutory direction to the contrary, the uninterrupted possession of an item of contraband is ordinarily regarded as one continuing offense under Maryland law." *Id.* at 134, 867 A.2d 1040. The Court hypothesized, however, that the offense of possession might, under some circumstances, not be a single continuing act, if, for instance, the possession was interrupted for some period of time or if it could be shown that the defendant possessed discretely "two or more quantities of a contraband drug that are kept in different places." *Id.* at 135, 867 A.2d 1040. *See Potts v. State,* 300 Md. 567, 583, 479 A.2d 1335 (1984) (upholding two convictions based upon possession of "two completely separate" stashes of drugs being held for different purposes).

The Court resolved the question of whether Anderson was being prosecuted for clearly discrete acts of possession by reviewing the charging documents. The Court noted that when Anderson was first prosecuted, the Statement of Charges "charged Anderson generally with possession of heroin in violation of [Criminal Law Article] § 5–601 on October 1, 2002 at 1500 Myrtle Avenue." *Anderson, supra,* 385 Md. at 140, 867 A.2d 1040. The charging document "did not specify a time and did not specify how much heroin Anderson possessed." *Id.* Because of the generality of the factual allegations in the Statement of Charges, the Court concluded that, under that charging document, "Anderson could have been convicted based on whatever he had in his possession that day at that place, including the drugs sold to detectives Barnes and Butler or, indeed, to anyone else." *Id.* at 140, 867 A.2d 1040. That being the case, the Court concluded that the subsequent prosecution for distribution on October 1, 2002,

placed Anderson in double jeopardy. "Having been convicted of that [first] offense [of simple possession], he cannot later be prosecuted for crimes that, in law, constitute the same offense." *Id.* at 141, 867 A.2d 1040. Accordingly, the later filed indictments for distribution should have been dismissed.

When we review the two successive indictments under which Ingram was prosecuted, we conclude that his successive prosecutions were, like Anderson's, for crimes that constitute the same offense for double jeopardy purposes. The first of Ingram's indictments—No. 03CR2487—alleged in the sole count that proceeded to trial "that **ANTON S. INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did possess a controlled dangerous substance of Schedule II, to wit: **COCAINE** . . . ." After Ingram had been convicted under that indictment, he was prosecuted a second time under Indictment No. 04CR0337, which alleged in the sole count that proceeded to trial "that **ANTON SHERROD INGRAM** late of Baltimore County aforesaid, on the **11th** day of **JUNE,** in the year of our Lord Two Thousand Three at Baltimore County aforesaid, unlawfully did distribute a controlled dangerous substance of Schedule II, to wit: **COCAINE** . . . ." The absence of any distinguishing allegations as to time, place, or purpose is immediately apparent.

Although we cannot tell whether the motion court that denied Ingram's motion to correct his sentence had access to information in the agreed statements of facts that led the court to conclude that "the possession of cocaine the Petitioner was tried and convicted of was in the cocaine found in his car subsequent to the traffic stop, not the possession for cocaine as it was being handed to the undercover officer in the distribution charge," no such distinction was made in the indictments. As the *Anderson* Court made clear, absent special circumstances, the charging documents—not the actual trial evidence—control the analysis of sameness-in-fact for double jeopardy purposes. *Id.* at 140–41, 867 A.2d 1040.

Accordingly, barring any negotiated agreement to the contrary that the transcripts might disclose, it appears that Ingram's motion to dismiss the second indictment should have been granted, and, had he pursued a timely appeal of his second conviction, that conviction should have been reversed based upon double jeopardy arguments similar to those asserted in *Anderson*.

 We do not have sufficient facts in the record to determine whether Ingram was denied effective assistance of counsel in failing to adequately articulate the double jeopardy arguments and in failing to pursue a direct appeal on that basis. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to establish a claim of ineffective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *Hiligh v. State*, 375 Md. 456, 459, 825 A.2d 1108 (2003) (counsel's failure to adequately argue a point after it was raised constituted ineffective assistance of counsel). Assuming, *arguendo*, that Ingram's failure to pursue an appeal was the result of him not receiving the benefit of effective assistance of counsel, he is not foreclosed from raising that issue in postconviction proceedings under the Maryland Uniform Postconviction Procedure Act—even if he is deemed to have waived the double jeopardy claim by failing to timely appeal. *See* Crim. Pro. § 7–106(b)(1)(i)(3) (certain errors are waived, and may not be raised in a postconviction proceeding if the defendant could have, but failed to, pursue a direct appeal); § 7–107(a) (the postconviction remedy "is not a substitute for . . . any remedy of direct review of the sentence or conviction"); and *Taylor v. State*, 381 Md. 602, 604, 851 A.2d 551 (2004) ("We hold that petitioner failed to preserve the double jeopardy issue for review because no objections or motion to dismiss based on double jeopardy were raised in the trial court in this case (or in the original case)."). The claim of ineffective assistance of counsel, however, is generally best asserted by way of a postconviction petition. *See, e.g., Mosley v. State*, 378 Md. 548, 560, 836 A.2d 678 (2003) ("Post-convic-

tion proceedings are preferred with respect to ineffective assistance of counsel claims because the trial record rarely reveals why counsel acted or omitted to act, and such proceedings allow for fact-finding and the introduction of testimony and evidence directly related to allegations of the counsel's ineffectiveness." (Footnote omitted)).

Ingram, however, sought to attack his conviction pursuant to a motion to correct an illegal sentence under Rule 4–345(a). If Ingram's motion had raised a claim that some illegality inhered in the sentence itself, his failure to pursue a timely direct appeal would not foreclose his right to file a motion pursuant to Rule 4–345(a). In *Chaney v. State,* 397 Md. 460, 466, 918 A.2d 506 (2007), the Court of Appeals noted that a defendant's failure to attack the sentence on direct appeal does not preclude the defendant from asserting a claim of illegality pursuant to Rule 4–345(a):

Maryland Rule 4–345(a) permits a court to "correct an illegal sentence at any time." If a sentence is "illegal" within the meaning of that section of the rule, the defendant may file a motion in the trial court to "correct" it, notwithstanding that (1) no objection was made when the sentence was imposed, (2) the defendant purported to consent to it, or (3) the sentence was not challenged in a timely-filed direct appeal.... The sentence may be attacked on direct appeal, but it also may be challenged collaterally and belatedly, and, if the trial court denies relief in response to such a challenge, the defendant may appeal from that denial and obtain relief in an appellate court.

We recognize that some cases of the Court of Appeals have referred to the scope of Rule 4–345(a) in broader terms than the most recent cases. In *Evans v. State,* 382 Md. 248, 278–79, 855 A.2d 291 (2004), for example, after confirming that, "as a general rule, a Rule 4–345(a) motion to correct an illegal sentence is not appropriate where the alleged illegality 'did not inhere in [the defendant's] sentence,' [quoting *State v. Kanaras,* 357 Md. 170, 185, 742 A.2d 508 (1999) ]," the Court also said: "A motion to correct an illegal sentence ordinarily

can be granted only where there is some illegality in the sentence itself *or where no sentence should have been imposed."* (Emphasis added.)

 In a case such as Ingram's, one could argue that he should have never been prosecuted a second time, let alone convicted a second time, and therefore, "no sentence should have been imposed" for the second conviction. Although we acknowledge the facial appeal of that argument, we conclude that such a broad reading of Rule 4–345(a) would permit any defendant who felt unjustly convicted to attack his conviction repeatedly by filing motions alleging that his sentence is necessarily "illegal" because there was a defect in the proceedings that led to the underlying conviction. Even if the claims of illegality that could permissibly be asserted under a Rule 4–345(a) motion were limited to alleged constitutional defects in the proceedings that led to the conviction, such challenges could range far beyond any illegality that inheres in the sentence itself. Such an expansive application of the rule would be inconsistent with the position the Court of Appeals has taken with respect to preservation of constitutional claims of error generally. *See, e.g., Taylor, supra,* 381 Md. at 616, 851 A.2d 551. In *Taylor, supra,* 381 Md. at 614, 851 A.2d 551, the Court of Appeals cited with approval *Howell v. State,* 56 Md.App. 675, 678, 468 A.2d 688, (1983), *cert. denied,* 299 Md. 426, 474 A.2d 218 (1984), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984), and noted that *Howell* held, "pursuant to Rule 885, that an appellate court is not required to reach a double jeopardy issue that was not brought in the trial court." It would be perverse indeed to prohibit an appellant from raising unpreserved double jeopardy claims on direct appeal, *id.,* but permit unpreserved double jeopardy claims to be raised by way of a Rule 4–345(a) motion. We are convinced that Rule 4–345(a) is not intended to reach every contention that the defendant was wrongly convicted.[2]

---

**2.** In *Evans, supra,* 382 Md. at 279, 855 A.2d 291, a case in which the death sentence had been imposed, the Court of Appeals acknowledged

An example of a case in which Rule 4–345(a) was appropriately invoked to correct a sentence that was alleged to be illegal because "no sentence should have been imposed" is *Ridgeway v. State,* 369 Md. 165, 797 A.2d 1287 (2002), in which the court had mistakenly imposed sentences for three counts of first degree assault even though the defendant had been found not guilty on those charges. The Court of Appeals agreed that the erroneous entry of those sentences could be corrected pursuant to Rule 4–345(a), stating, *id.* at 171, 797 A.2d 1287: "The sentences for the three first degree assault convictions were illegal and properly vacated pursuant to subsection (a) of Rule 4–345. A court cannot punish a defendant for a crime for which he or she has been acquitted."

Another case in which the Court of Appeals cited Rule 4–345(a) as authority for it to review on direct appeal a sentence that was alleged to be illegal because no sentence should have been imposed is *Moosavi v. State,* 355 Md. 651, 662, 736 A.2d 285 (1999), where the defendant had been "charged and convicted under an entirely inapplicable statute." Under such circumstances, the Court of Appeals concluded that "the resulting sentence under the inapplicable statute is an illegal sentence which may be challenged at any time." *Id.* at 662,

---

that Rule 4–345(a) will be construed more expansively in a case involving review of capital punishment. The Court there stated, *id.:*

[T]his Court has appeared to recognize an exception to the above-summarized principles where, in a capital sentencing proceeding, an alleged error of constitutional dimension may have contributed to the death sentence, at least where the allegation of error is partly based upon a decision of the United States Supreme Court or of this Court rendered after the defendant's capital sentencing proceeding. *Oken v. State,* 378 Md. 179, 835 A.2d 1105 (2003), *cert. denied,* 541 U.S. 1017, 124 S.Ct. 2084, 158 L.Ed.2d 632 (2004), was a Rule 4–345 proceeding to correct an illegal or irregular sentence.

*But cf. Baker v. State,* 389 Md. 127, 139, 883 A.2d 916 (2005), another death penalty case, in which the Court of Appeals expressly refused to "expand further the presently recognized grounds upon which relief may be considered under Rule 4–345(a)." In any event, the *Oken–Evans* exception permitting more expansive review pursuant to a Rule 4–345(a) motion in a death penalty case would in no way be affected by our conclusion that the courts will entertain Rule 4–345(a) motions in non-capital cases only when the alleged illegality inheres in the sentence itself.

736 A.2d 285. The Court stated that " 'it is quite obvious that [the charged statutory offense] does not apply and, so, as to the count of which he was convicted, the petitioner received an illegal sentence.' " *Id.* (quoting *Campbell v. State,* 325 Md. 488, 508–09, 601 A.2d 667 (1992)).

Unlike the respective defendants in *Ridgeway* and *Moosavi,* Ingram was never acquitted of the crime of distribution of cocaine, and Ingram was not convicted under a clearly inapplicable statute. In the words of the motion court that denied Ingram's motion, Ingram "concede[d] that he sold an undercover police officer a bag of cocaine that he had on his person. This is certainly the distribution of cocaine." Such a concession would support Ingram's conviction for distribution, for which the sentence imposed was within the statutory limits.

We acknowledge that the double jeopardy prohibition against multiple sentences for a single offense might be properly asserted pursuant to Rule 4–345(a) under the circumstances presented in *Randall Book Corporation v. State,* 316 Md. 315, 323, 558 A.2d 715 (1989). The corporate defendant in that case was a bookstore that had been convicted of 116 separate counts of displaying sexually explicit magazines, based upon the display of 116 different magazines. After the convictions were affirmed on appeal, the defendant filed a motion to correct an illegal sentence, alleging that the double jeopardy protections should have precluded the court from imposing separate fines of $500 for each magazine. The State argued that the defendant was improperly seeking to use Rule 4–345(a) to raise issues that should have been raised on direct appeal. But the Court of Appeals concluded that the bookstore's claims of illegality were sufficiently related to the sentences to be considered upon a Rule 4–345(a) motion.

In so ruling, however, the Court of Appeals stated that it considered "instructive" a comment made by the Supreme Court in *Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), in the context of reviewing a claim asserted under former Fed.R.Crim.P. 35(a). That rule provided, in language identical to Maryland Rule 4–345(a): "The

court may correct an illegal sentence at any time." The *Randall Book* Court, 316 Md. at 321–22, 558 A.2d 715, quoted the following "instructive" statement from *Hill*, 368 U.S. at 430, 82 S.Ct. 468:

"[A]s the Rule's language and history make clear, the narrow function of Rule 35 is to permit correction at any time of an illegal *sentence*, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence."

(Emphasis in original.) [3]

With that background, the *Randall Book* Court concluded that the bookstore properly asserted a double jeopardy claim pursuant to a Rule 4–345(a) motion because the defendant was attacking the imposition of multiple sentences. The Court of Appeals stated, 316 Md. at 322, 558 A.2d 715:

Appellant's argument that the sentences violate the Double Jeopardy Clause of the Fifth Amendment because multiple sentences were imposed for the same offense does allege an illegal sentence within the meaning of Rule 4–345. Similarly, we conclude that appellant's allegation that the aggregate of 116 sentences imposed constitutes cruel and unusual punishment prohibited by the Eighth Amendment is cognizable under a claim of an illegal sentence. Although these claims could have been raised under direct appeal, the failure to do so will not ordinarily constitute a waiver that will bar a collateral attack upon an illegal sentence.

---

**3.** Although Maryland Rule 4–345(a) continues to contain the language permitting a court to correct an illegal sentence at any time, amendments to Fed.R.Crim.P. 35(a) have deleted such authority from the Federal Rules of Criminal Procedure. According to 3 CHARLES ALAN WRIGHT, NANCY J. KING & SUSAN R. KLEIN, FEDERAL PRACTICE AND PROCEDURE § 584 (3d ed.2004) (footnotes omitted):

Under the original Rule 35, an illegal sentence could be corrected at any time. This was in accord with prior law. After the 1987 amendments to the rule, the district court no longer has authority to correct a sentence because it is illegal or was illegally imposed. Such challenges now must be made on direct appeal, or by motion under [28 U.S.C.] § 2255.

The Court noted that Randall Book had been subjected to only a single prosecution, and the double jeopardy issue the defendant raised in its Rule 4–345(a) motion focused on whether the court had impermissibly imposed multiple sentences for a single unit of the offense. *Id.* at 324, 558 A.2d 715. If Randall Book had succeeded in the claim it made in its motion, the circuit court could have corrected the sentence by modifying the sentence it had imposed.

In contrast, Ingram's claim of a double jeopardy problem relates only indirectly to the sentence. Rather, his complaint stems from the court's refusal to dismiss the second indictment. *Cf. Hill, supra,* 368 U.S. at 430, 82 S.Ct. 468 (the function of the rule permitting correction of an illegal sentence is "not to re-examine errors occurring at the trial *or other proceedings prior to the imposition of sentence* ") (emphasis added). Ingram's claim, in essence, is that the court committed an error prior to the imposition of his current sentence, while the claim of error in *Randall Book* was that the sentencing court committed an error at the time it imposed Randall Book's sentences. Whereas Randall Book's claim of illegality was directly related to sentencing, Ingram's claim is not. *Cf. State v. Kanaras,* 357 Md. 170, 185, 742 A.2d 508 (1999) (the alleged illegality in the conduct of the Parole Commission and the Commissioner of Correction in administering the sentence "did not render illegal Kanaras's sentence. The illegality . . . did not inhere in Kanaras's sentence." Consequently, "[a] motion under Rule 4–345(a) to correct an illegal sentence . . . was not an appropriate action" for correction of the alleged illegality.).

Nor do we read *State v. Griffiths,* 338 Md. 485, 659 A.2d 876 (1995), to stand for the proposition that a claim of illegal successive prosecutions may be raised by way of a Rule 4–345(a) motion even if the claim of double jeopardy was not raised on appeal. Although the Court of Appeals made reference to Rule 4–345(a) in *Griffiths* as authority for its ultimate disposition of the appeal, it is clear that the double jeopardy claim had been raised by Griffiths in the circuit court at the time of his second prosecution, as well as on direct appeal to

this Court, and then by way of a petition for certiorari in the Court of Appeals. After the Court of Appeals determined on direct appeal that Griffiths's claim of double jeopardy was meritorious, the Court cited Rule 4–345(a) as authority for the circuit court to vacate the sentence imposed for the *prior* conviction on the lesser offense that was not even before the Court, having never been challenged. The Court may have reasoned—notwithstanding the strong dissent—that there was little practical difference whether the sentence was vacated in the first or second case because trial judge in the second case had agreed that he "would impose a sentence identical to that previously imposed by [the trial judge who sentenced Griffiths for the first conviction], to run concurrently with that sentence...." *Id.* at 488, 659 A.2d 876. Given the fact that no Rule 4–345(a) motion was ever filed in the *Griffiths* case, we do not view the *Griffiths* Court's reference to Rule 4–345(a), under the peculiar circumstances of that case, as authority for the proposition that *any* double jeopardy claim of successive prosecutions may be raised at any time by way of a motion to correct an illegal sentence.

The distinction we draw between double jeopardy issues which inhere in the sentence and those issues that arise prior to sentencing is consistent with the Court of Appeals's description of the scope of Rule 4–345(a) in *Chaney, supra,* 397 Md. at 466–67, 918 A.2d 506, where the Court noted that Rule 4–345(a) permits a defendant to challenge a sentence belatedly. The Court there said, *id.:*

> The *scope* of this privilege, allowing collateral and belated attacks on the sentence and excluding waiver as a bar to relief, is narrow, however. We have consistently defined this category of "illegal sentence" as limited to those situations in which the illegality inheres in the sentence itself; *i.e.,* there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful. *See Evans v. State,* 389 Md. 456, 463, 886 A.2d 562, 565 (2005); *Baker v. State,* 389 Md. 127, 133, 883 A.2d

916, 919 (2005); *Randall Book Corp. v. State*, 316 Md. 315, 321–23, 558 A.2d 715, 718–19 (1989). As we made clear in *Randall Book Corp.*, any other deficiency in the sentence that may be grounds for an appellate court to vacate it—impermissible considerations in imposing it, for example—must ordinarily be raised in or decided by the trial court and presented for appellate review in a timely-filed direct appeal. The sentence may not be attacked belatedly and collaterally through a motion under Rule 4–345(a), and, subject to the appellate court's discretion under Maryland Rule 8–131(a), the defendant is not excused from having to raise a timely objection in the trial court.

(Footnote omitted.)

Ingram's claim that his sentence was illegal because he should not have been prosecuted a second time does not fall within the *Chaney* definition of an "illegal" sentence as being a sentence "in which the illegality inheres in the sentence itself." *Id.* As the Court of Appeals stated in *Pollard, supra,* 394 Md. at 42, 904 A.2d 500: "Because the alleged illegality did not inhere in the sentence itself, the motion to correct an illegal sentence is not appropriate." Accordingly, we conclude that the circuit court did not err in denying Ingram's motion asserted under Rule 4–345(a).

**STATE'S MOTION TO DISMISS APPEAL DENIED. JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**